[Crim. No. 5439. Second Dist., Div. One. Jan. 3, 1956.]

THE PEOPLE, Respondent, v. ALBERT LAPIN,
Appellant.

Arthur J. Crowley for Appellant.

Edmund G. Brown, Attorney General, W. B. Thayer, and William E. James, Deputy Attorneys General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County defendant was accused of the crime of violation of section 11500, Health and Safety Code

of the State of California, a felony, in that he did wilfully, unlawfully and feloniously have in his possession marijuana on or about September 3, 1954. The information further alleged: "That before the commission of the offense hereinbefore set forth in this information, said defendant, ALBERT LAPIN was, on or about the 31st day of May, 1945, in the Superior Court of the State of California, in and for the County of Los Angeles, convicted of the crime of Violation of Section 11160 of the Health and Safety Code." Defendant entered a plea of not guilty and admitted the prior conviction. Trial by jury resulted in a verdict of guilty as charged. His motion for a new trial was denied and he was sentenced to state prison. From the judgment of conviction and from the order denying his motion for a new trial defendant prosecutes this appeal.

As to the factual background surrounding this prosecution, the record reflects that at 10:30 a.m. on the morning of September 3, 1954, Officer Yocham in the company of Sergeant Kennedy and Officers Cohen and Cryar, assigned to the narcotic division of the Los Angeles Police Department, went to 1775 Sycamore in Hollywood, in the city of Los Angeles. They contacted the landlady and proceeded to apartment 8. The landlady knocked on the door and advised defendant he had visitors. He opened the door and the officers entered, identified themselves as police officers, and announced they were going to conduct a search for narcotics. In this regard Officer Yocham testified: "When we went to the apartment and told him what we were going to do, Mr. Lapin said that we were perfectly welcome to search the apartment, that he had nothing to hide and he was getting tired of being under suspicion or being stopped by narcotic officers, or something to that effect." Defendant, however, testified that he protested and told the officers that they had no right to search his apartment and that he wanted to call his lawyer, but that the officers told him he could call nobody. A thorough search of the apartment revealed no narcotics, whereupon the officers escorted defendant out on the street in front of his apartment where they searched his automobile, but found no narcotics therein.

Defendant testified that while the search of his apartment was in progress, one of the officers handed him his wallet and told the defendant to remove his money therefrom. As this officer handed the wallet to the defendant, another officer was standing beside the defendant with his hand on defend-

ant's arm. The wallet slipped from the defendant's hand and he made a motion to grab it. As he did so, one of the officers grabbed him by the neck and the defendant was knocked to the floor on his face. The officers pulled on defendant's arms and one of them struck the defendant on the neck. The defendant was then struck again on the right side of his neck and then again on the left side of his neck. One officer reached over and pulled the defendant's head backwards and another held defendant's nose. The defendant further testified that he thought the officers were going to kill him, and he was knocked unconscious. As he regained consciousness, he heard someone say, ''Shoot him,'' and someone else told him to get up.

That as the defendant started to get up, one of the officers grabbed him by the head and smashed his forehead against the floor three times.

That the officers pulled defendant up and sat him on the bed with one officer holding each of defendant's arms. Then Officer Cohen said, ''You s-o-b,'' and struck the defendant in the mouth. The defendant became nauseated and went into the bathroom. He looked into the mirror and saw blood on his face. He then stated to Officer Kennedy that the officers shouldn't have hit him, and Officer Kennedy replied, ''Nobody hit you.''

However, Officer Yocham testified that while searching a desk in defendant's apartment, he observed a wallet on this desk which contained money and he asked the defendant to remove the money from the wallet. The defendant then came over from the bed where he was seated, and he was handed the wallet. As he received the wallet, his hands began to shake. He removed a piece of ''brown paper or something wrapped in a piece of brown paper'' from the wallet, and then turned and ran towards the door. As he ran, he put his right hand to his mouth. Officers Yocham, Cohen and Cryar chased the defendant, a struggle ensued, all fell to the floor, and they succeeded in handcuffing the defendant. During this struggle, defendant appeared to be chewing something in his mouth, and one of the officers asked defendant to spit it out. To handcuff the defendant, Officer Yocham found it necessary to pull one of the defendant's arms behind his back while Officer Cryar held the other arm. Because it also appeared to Officer Cohen that defendant was attempting to swallow something as he fled, he ''lunged for the defendant, placing a police stranglehold upon his neck in an attempt to secure the item

he was trying to swallow." According to Officer Cohen, the defendant headed towards the door, threw himself on the floor next to the door, meanwhile holding what appeared to be a "crudely wrapped white paper cigarette" in his mouth.

Defendant was then taken to a beauty parlor operated by him at 7555 Sunset Boulevard. There was testimony that when defendant arrived at the beauty parlor, his face was badly bruised and swollen, and that he appeared to have sustained injuries to his eye, lip and head. Upon arrival at the beauty parlor the officers and defendant entered through the rear door. The other occupants were a patron, and a male and female beauty parlor operator. According to the officers the beauty operators were permitted to carry on their work, the door to the beauty parlor remaining unlocked, and the male beauty operator was allowed to leave the premises to go next door and return. This operator however, testified that one of the officers "grabbed my right wrist and hit it with those type of handcuffs that snap immediately on the wrist, and he pulled my left hand behind me and held me so I couldn't move. I didn't struggle but he held me." And as to the female operator, that, "they (the officers) grabbed her wrists right in front of Al (the defendant)."

At the beauty parlor each officer began to search different portions of the premises. There was testimony on behalf of the prosecution that after a 30 or 40-minute search Officer Cohen found eight (8) small brown bags of marijuana in a small room to the rear of defendant's beauty parlor. The bags were beneath certain boards, one of which the officer had noticed was only nailed down on one end. This board was closest to Officer Cohen and was unlike the other boards in that it was not dusty. After moving crates and boxes, Officer Cohen pulled the board nearest to him up from the floor and found the bags of marijuana. Officer Cohen then called to the others and showed them what he had found. The other officers and occupants including the defendant arrived at the door to the small storage room, and Officer Cohen pointed to the brown paper bags located on the floor and asked, "What is this?" Defendant answered, " . . . That's mine." Sergeant Kennedy advised defendant that he was not to say anything that was not true, and that all the officers wanted was the truth concerning the bags of marijuana. Again the defendant asserted that the bags belonged to him. Officer Yocham then advised the defendant: " . . . Listen, Al, if it is not yours, if it is somebody else's, if it belongs to any other people or some-

body else, that is what we want to know, . . . '' Again defendant asserted the bags belonged to him.

Later, while the officers and defendant were at the front of the beauty parlor, defendant admitted he had paid $100 to a fellow named Rudy the day before, that Rudy had come to his apartment carrying a brown shopping bag, that defendant had dipped his hands into the bag and removed a certain quantity of this material and placed it on a newspaper which defendant had laid on a coffee table; that he had not had time to ''manicure'' the marijuana; that he used marijuana for himself and did not sell marijuana; that he used marijuana because of the type of work he did; that he was overworked and that the use of marijuana gave him a lift; that he believed it was sensible to buy marijuana in large quantities, as he had done in this case, because it was cheaper that way, and also in that way detection was less likely as he did not come in contact with the seller so often; and that he put the marijuana in small brown bags because it was easier for him to use it in that form.

One of the officers then asked defendant: ''I asked him—I think Officer Cohen asked him at the time, or someone there asked him if it was worth the hassle there of eating that marihuana cigarette, or that cigarette that he had eaten, and Mr. Lapin said it was better than going to jail, that he just took his chances that we wouldn't find the rest of the stuff.'' Cross-examination brought out that Officer Cohen also asked defendant in the police car why defendant took the chance of trying to eat the marijuana cigarette at defendant's apartment, to which defendant replied, ''I took my best shot.''

Sergeant Kennedy and Officer Cryar corroborated the events and their sequence as above stated by Officers Yocham and Cohen.

The evidence found in defendant's beauty parlor by Officer Cohen was identified as marijuana.

All of the aforementioned officers denied having threatened defendant at any time, having struck or kicked him, or having seen anyone do so, having handcuffed or attempted to handcuff any of the employees of defendant at any time, or of handcuffing the latter at the beauty parlor, having locked the doors or otherwise unnecessarily interfered with the business of defendant's beauty parlor, or having broken bottles or strewn papers over such places of business.

The prosecution also introduced evidence concerning the prior offense set out in the information. A. V. Beckner, inspector for the California Narcotic Bureau, testified that on May

4, 1945, he, Virginia Castillo and Sergeant Reid accompanied defendant to defendant's beauty parlor, then located at 7th and Hill. There the inspector went with defendant to defendant's office. Defendant went out onto the fire escape to a standpipe, unscrewed a coupling on the pipe, and brown, rolled cigarettes fell from the pipe into the hands of the inspector, who was standing close by. Defendant was put under arrest.

Testifying as a witness in his own behalf, defendant denied possession of the marijuana in question. He also offered evidence as to the involuntary nature of his alleged confession made at or near the time of the claimed discovery of the marijuana in his place of business. Evidence, both oral and documentary, consisting of photographs, was offered concerning the type of the rear door and the construction of the floor at defendant's beauty parlor. Concerning the involuntary nature of his confession at the beauty parlor, defendant on *voir dire* testified that he was knocked to the floor in his apartment when his wallet fell out of his hand, was hit on the neck, and became unconscious. As he regained consciousness, his head was banged against the floor. As he was assisted to his feet, he was struck in the mouth. Defendant's face became swollen and bruised. That in searching his apartment, the officers pulled a mattress and some dresser drawers into the middle of the apartment floor, threw papers and bottles on the floor, directed a beauty operator to lock the front door, and refused to allow defendant to answer the phone the first time or two it rang. Defendant testified that he first denied ownership or knowledge of the marijuana which Officer Cohen found; but after one of the officers stated that they were going to handcuff all who entered the beauty parlor and commenced to handcuff Donald Lystra (male beauty operator employed by defendant), defendant advised the officers they were going to ruin his business and requested that they take the handcuffs off the operator and take him down to the station. Although other witnesses testified in defendant's behalf that they did not hear defendant admit he had purchased the marijuana, used it, etc., defendant did not at any time deny such admission. Defendant admitted he was in no fear of personal injury when he tacitly admitted his guilt by requesting the officers to take him to the station. Instead, he testified that his motivation for this request was fear that his employees would be arrested and his business interfered with.

As his first ground for reversal, appellant insists that the

court committed prejudicial error in permitting the prosecution to refer to and introduce evidence of a prior conviction of a misdemeanor by him in 1945 for the purpose of proving appellant's guilt of the crime of possessing marijuana charged against him in the instant action, which allegedly occurred in 1954. That further error was committed by the court in giving to the jury an instruction reading in part as follows:

"Such evidence was received for a limited purpose only: not to prove distinct offenses or continual criminality, but for such bearing, *if any, as it might have on the question whether the defendant is innocent or guilty of the crime charged against him in this action* (in ~~count~~ ———— of ~~the information~~).

"You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case. .

"(The value, if any, of such evidence depends on whether or not it tends to show———

"(1) —the identity of the person who committed the alleged crime in question in this case, if it was committed; ~~(or)~~

"(2) —~~that the defendant had a motive for the commission of the offense charged against him in this action; (or)~~

"(3) —~~that the defendant entertained the intent which is a necessary element of the alleged crime for which he now is on trial, as pointed out in other of my instructions;~~ or

"(4) —*that the defendant was familiar with the means alleged to have been used in the commission of the crime of which he is accused in this action;* (or)

"(5) —*that the defendant possessed knowledge that might have been useful in the commission of the (~~any~~) crime for which he is now on trial;* (or)

"(6) —that there existed in the mind of the defendant a plan, scheme, system or design, into which fitted the commission of the offense for which he now is on trial;" (Emphasis added.) This instruction should not have been given.

As was said by this court in *People v. Carvalho,* 112 Cal.App.2d 482, 492 [246 P.2d 950]:

"It is a cardinal and universally recognized rule that in a criminal prosecution an accused can be tried only for the offense which is charged against him in the indictment or information, and that evidence of collateral independent crimes is not admissible. The equally well recognized exceptions to this rule are clearly defined. 'Evidence of other crimes may be admitted when it tends directly to establish the crime charged by proving a material fact, where it is part of the res gestae, or where it helps to disclose motive, intent, premedi-

tation, guilty knowledge, malice, or a common plan or scheme (20 Am.Jur., § 310 et seq., p. 289 et seq.; 22 C.J.S., § 683 et seq., p. 1089 et seq.; Wigmore on Evidence, vol. II, ch. XIII, p. 191 et seq.; Wharton's Criminal Evidence, § 345 et seq., p. 487 et seq.; 8 Cal.Jur., § 168 et seq., p. 60 et seq.; 13 Cal.Jur., § 84 et seq., p. 703 et seq.)

" 'The trial court, however, should be guided by the rule that such proof is to be received with "extreme caution," and if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt. (*People* v. *Lane* (1893), 100 Cal. 379, 387-390 [34 P.2d 856]; 13 Cal.Jur., § 84, p. 707; 8 Cal. Jur., § 168, p. 61)' (*People* v. *Albertson*, 23 Cal.2d 550, 576, 577 [145 P.2d 7].)" (See also *People* v. *Channell*, 136 Cal. App.2d 99, 110-115 [288 P.2d 326] wherein Mr. Justice Vallée in an exhaustive and well-considered opinion, presents an excellent statement of the rule.) ▮ The rule is now firmly established that evidence of a distinct, substantive offense cannot be received unless there is some clear connection between that offense and the one charged from which it may be logically inferred that if guilty of one he must be guilty of the other (*People* v. *Lane*, 100 Cal. 379, 385 [34 P. 856]). If that is not the case, such evidence is not admissible. It cannot be received to prove the inclination of an accused towards crime. And in that way, to render more probable his guilt of the charge for which he is on trial. As was said in *People* v. *Westek*, 31 Cal.2d 469, 476 [190 P.2d 9]: "It is the general rule that evidence of other crimes, where it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, should be excluded because its probative value is outweighed by its prejudicial effect (citations)." (See also *People* v. *Hadley*, 84 Cal.App.2d 687, 692 [191 P.2d 517]; *People* v. *Morgan*, 87 Cal.App.2d 674, 681 [197 P.2d 413].)

In the instant proceeding the prosecution made an offer of proof to the court in chambers to the effect that the appellant in May, 1945 (nine years prior to the date charged herein) took officers to a standpipe outside of a building in which the appellant had a beauty parlor and that in this standpipe a narcotic inspector found approximately 35 marijuana cigarettes with the help of defendant. The court overruled the appellant's objection to such offer of proof.

In the opening statement, counsel for the prosecution stated to the jury that the evidence would show that in 1945 the appellant took one Officer Beckner to a standpipe located on the outside of appellant's beauty parlor and that secreted there were some marijuana cigarettes. Further, it was pointed out to the jury that the prosecution expected the evidence to show that appellant pleaded guilty to the offense charged as a result of the transaction in 1945. The People called Officer A. V. Beckner as a witness to testify concerning the arrest of the appellant in May of 1945 for this prior offense. The appellant's objection to such testimony was overruled. Officer A. V. Beckner proceeded to testify that in May of 1945 he went with appellant to a standpipe located outside the office of the latter's beauty parlor accompanied by the appellant, a young lady named Virginia Castillo, and a member of the Los Angeles Police Department, Sergeant Reid. The appellant had directed Officer Beckner to his office on the 9th floor of the Fox Building at 7th and Hill in Los Angeles; they entered the office. opened a doorway which went out onto the fire escape, and went to the standpipe. The appellant unscrewed a coupling at the lower end of this pipe and as it came open, a number of brown rolled cigarettes wrapped in a Kleenex paper fell into Officer Beckner's hands. Officer Beckner placed the appellant under arrest at that time and booked the evidence at the Los Angeles Police Department property clerk's office. Out of the hearing of the jury, it was explained to the court that there had been a prior conviction concerning this 1945 action, that such conviction was a misdemeanor, that a complaint was issued as a result of this transaction and that appellant pleaded guilty to such possession. The court indicated that a showing of the conviction would be admitted. The judgment roll concerning the conviction of the prior offense was then offered by the People into evidence over the objection of the appellant. That portion of the judgment roll concerning the conviction was then read to the jury. Prior to a complete reading of such record, the court asked both counsel in the presence of the jury if they would be willing to stipulate as to what the information in the record contained. The prosecution then offered to stipulate that the record of conviction would indicate that the appellant was charged with violation of section 11160 of the Health and Safety Code on the 4th of May, 1945, and that on that date he had in his possession marijuana, and that he was duly arraigned and pleaded guilty as charged in the in-

formation. The court then asked counsel for the appellant if he would stipulate that the offense just read by counsel for the prosecution constituted a misdemeanor due to the sentence imposed. Both counsel agreed to that stipulation. The court then stated that in view of that stipulation it would be unnecessary to place the criminal record of the 1945 offense in evidence. Both counsel agreed concerning the propriety of that ruling.

Respondent's contention that, "It was stipulated that the State could read the criminal record concerning defendant's plea of guilty to possession of marijuana on May 31, 1945" is not borne out by the record. On the contrary, the record reflects that appellant made continuous and strenuous objections to the introduction of the record and any evidence concerning the nine-year-old prior misdemeanor conviction. It was only after these objections were overruled and the court admitted the record into evidence that appellant stipulated that the prior offense was a misdemeanor by reason of the sentence imposed and that the files containing the record and judgment roll might be returned to the regular files of the superior court.

Respondent argues that the object of admitting the evidence of the prior conviction in the case at bar was twofold: One purpose was to establish a system, scheme, or plan on the part of defendant to hide marijuana at his place of business; to ask the triers of fact to infer from this general plan or scheme that defendant was responsible for the eight bags of marijuana in his beauty parlor, others admittedly having access to such parlor. Respondent then quotes the language of the court that evidence of the prior conviction was admissible, "on the theory that it tended to prove that the defendant had a propensity to store or a common plan to store narcotics in the vicinity of his place of business." But this reasoning is in direct conflict with the rule that evidence of a collateral crime is not admissible because it might tend to prove an accused's inclination towards crime. Here we are confronted with a prior offense committed some nine years prior to the date of the crime charged in the information. Viewed in the light that the prior offense was remote by some nine years, coupled with the facts and circumstances presented by the record here in question, the conclusion seems inescapable that it did not tend directly to establish the crime charged and therefore was clearly inad-

missible (*People* v. *Albertson*, 23 Cal.2d 550, 577 [145 P.2d 7]).

The second ground advanced by respondent to support the ruling of the trial court is that the evidence was admissible to show knowledge and intent. ■ So far as "specific intent" to violate the law under which this prosecution arose is concerned, such an intent is not an ingredient of the crime of possession of a narcotic (*People* v. *Gory*, 28 Cal.2d 450, 456 [170 P.2d 433]; *People* v. *Candiotto*, 128 Cal.App.2d 347, 353 [275 P.2d 500]).

■ It is of course true, that in a prosecution such as the one now before us, one of the facts of which an accused must have knowledge is that the article is a narcotic, because that is the essential fact, which brings the act within the provisions of the applicable code section. However, in the instant case there was never any contention raised by appellant to the effect that while he possessed the forbidden weed he did not know it was marijuana.

It is noteworthy that in the cases relied upon by respondent, it was the accused who, while admitting possession of the contraband, disclaimed any knowledge of its narcotic character. In the case now engaging our attention there was no claim of possession with lack of knowledge that the articles were narcotics. ■ The sole issue involved was whether appellant was in possession of the marijuana in question, so all that evidence of the prior offense could prove was that defendant was more likely than not, in possession of the marijuana here involved. This does not fall within the area of the exceptions to the general rule heretofore enunciated permitting evidence of a prior offense. We are satisfied that the challenged evidence should not have been received. That the admission of this testimony was prejudicially erroneous there can be little, if any doubt. The evidence was extremely conflicting and the jury deliberated some 24 hours before returning a verdict of guilty. The error in admitting the evidence of a prior conviction materially affected the substantial rights of appellant and may well have been the deciding factor which brought about his conviction.

Appellant next complains that the court erred in permitting the prosecution to introduce evidence which was purportedly obtained by the use of illegal methods of forceable entry and search of appellant's home and place of business without a search warrant in violation of the constitutional guarantees against unreasonable searches and seizures. Neither

at the trial or on his motion for a new trial did appellant raise this objection. Had an objection been made this issue would have been presented to the court and opportunity for a ruling thereon would have been afforded. However, in view of our conclusion that the conviction and order herein must be reversed, for the reason hereinbefore assigned, it becomes unnecessary to pass upon appellant's contention as to the legality of the means used to obtain the evidence presented. Upon a retrial the issue may be properly presented for determination.

■ A further contention made by appellant is that the court erred in permitting evidence of an alleged confession by appellant to be introduced into evidence. This contention cannot be sustained. The testimony as to whether appellant or his employees were threatened, assaulted, handcuffed, etc., was in conflict. Whether a confession is free and voluntary is a preliminary question for determination by the trial court (*People* v. *Miller*, 135 Cal. 69, 71 [67 P. 12]; *People* v. *Siemsen*, 153 Cal. 387, 394 [95 P. 863]).

We are not prepared to say that the court below abused its discretion when it admitted appellant's confession in evidence. There is ample evidence in the record, which if believed by the court, some of which is outlined above, warrants the conclusion that it was not induced by threats or intimidation. ■ The fact that the evidence offered by the accused conflicts with that of the prosecution does not justify the exclusion of the evidence of his confession. ■ Discretion is vested in the trial court to determine whether or not a confession is admissible and the jury under proper instructions, are the sole judges of the credibility of the witnesses in regard to the matter (*People* v. *Oliveria*, 127 Cal. 376, 381 [59 P. 772]). ■ It is not within the province of a reviewing court to say that the trial court committed error in admitting a confession of guilt unless such error appears as a matter of law from the record presented (*People* v. *Lehew*, 209 Cal. 336, 341 [287 P. 337]. See also *People* v. *Siemsen, supra,* p. 394; *People* v. *Castello*, 194 Cal. 595, 600 [229 P. 855]; *People* v. *Clements*, 6 Cal.App.2d 582, 583 [44 P.2d 657]).

Appellant's claim that the evidence was insufficient to sustain the verdict is without merit. ■ Under the rules announced in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Haydon*, 18 Cal. 543, 553, 554 [123 P. 1102, 1114]; *People* v. *DeVaughan*, 136 Cal.App. 746, 752 [29 P.2d

914], it is not within the province of an appellate tribunal to retry the case and to make inferences from the facts proved. That function belongs to the duly constituted arbiter of the facts. The appellate court is limited to deciding only whether, upon the face of the evidence, it can justly be held that sufficent facts could not have been found to warrant the inference of guilt.

In the case now engaging our attention, as we have heretofore noted, the evidence is in sharp conflict, it is true that the jury had an opportunity to observe the demeanor of the witnesses, and may have had reason to return the verdict they did, irrespective of the error committed during the trial. As to this of course, we can say nothing. From the mere record as we read it, however, the errors may have turned the scale in favor of the prosecution. It is the bounden duty of courts to insist that a defendant be fairly convicted, because if he is not so convicted he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent. The fact that the evidence may point rather conclusively to defendant's guilt does not take from the latter his right to such a fair and impartial trial.

For the reasons herein stated, the judgment and the order denying defendant's motion for a new trial are, and each is reversed and the cause remanded for a new trial.

Doran, J., and Ashburn, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.