[Crim. No. 3286. First Dist., Div. One. Feb. 8, 1957.]

THE PEOPLE, Respondent, v. MACK EARL ROACH, Appellant.

Claude O. Allen for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant was convicted by a jury of second degree burglary. He appeals from the judgment of conviction.

### QUESTIONS PRESENTED

1. Alleged error of the trial court in admission of certain evidence including evidence of other crimes and evidence for purposes of impeachment.

2. Was the testimony of the accomplice Winn corroborated?

### EVIDENCE

On March 22, 1956, defendant and one Winn entered the Pic-N-Pac Market in El Cerrito. The two came up to the check stand. Defendant went on through. Winn placed some articles on the stand. Winn apparently noticed that Smith, the assistant manager of the market, was looking at him while phoning. Winn told the checker he had forgotten something, left the check stand, walked to the mayonnaise section, pausing there, and then left the store without going back to the check stand. Smith could only see his head as he walked along. There was no one else around. Smith immediately went to the mayonnaise section and found there four cartons of cigarettes which were not there two minutes before. Suspecting that defendant and Winn were attempting to steal cigarettes, Smith had the police called and instructed clerk Sanders to follow Winn and get the license number of his car. Sanders testified that the two men were together in various parts of the store. It was when Smith went to the phone that Winn said he had forgotten something and went to the mayonnaise section. Sanders followed Winn and took the license number of the car that Winn got in. Defendant was then in the driver's seat.

March 31, 1956, Winn entered another Pic-N-Pac Market (this time in Berkeley). Defendant waited for him in his car. It bore the license number taken by Sanders. The store employees had been alerted to the attempted theft at the other store and had been given the license number of the car involved. Finding the license number to be the same, the store manager called the police. Assistant Manager Barton saw Winn putting cigarettes in the lining of his jacket. As

Winn was leaving the store Barton followed him. Outside the store Barton hollered to Winn, who then started running. Barton ran after him and saw him throw down three or four cartons of cigarettes. During the chase Barton saw defendant in his car following as near as possible Winn's line of flight and honking his horn. Winn cut across lots and was eventually caught by Barton. Winn still had some cartons of cigarettes bearing the store stamp in his jacket.

Winn testified at the trial as a prosecution witness. He admitted that he and defendant had stolen from other stores and that on March 31st they had gone to the Berkeley Pic-N-Pac Market in defendant's car to steal something so they could finance a trip to San Francisco. Winn obtained the jacket from defendant. It had slits in it. (Apparently these made it easier to insert the stolen cigarettes.) Defendant waited in his car for Winn.

1. *Admission of Evidence.* (a) Defendant following chase. ■ Barton, after describing his chase of Winn, was asked if he noticed anything unusual while doing so. He then testified to seeing defendant following in his car honking his horn. Defendant's contention that this evidence was inadmissible is without merit. In the first place, he made no objection to it. Secondly, it tended to show defendant's connection with the crime and to corroborate Winn's testimony that defendant was waiting for him to return to the car with the spoils. ■ As said in *People* v. *Bennett,* 132 Cal.App. 2d 569, 576 [282 P.2d 590], a conspiracy may be proved by indirect evidence and inferences justified by the circumstances. The circumstances here were entirely different from those in *People* v. *Stevens,* 68 Cal. 113 [8 P. 712], where the court held inadmissible evidence that one Harrigan and two others, none of whom were in anywise connected with the defendant in the case, were looking in the window of a store where the defendant was endeavoring to sell boots similar to those which had been stolen, and ran away when they saw the witness coming. Here defendant's connection with Winn and the use of the car in a prior attempted theft as well as this one were well established.

(b) The incident of March 22d.

■ Defendant contends that the evidence before related concerning the attempted theft of cigarettes is not sufficient to establish the commission of a crime and therefore inadmissible at the trial of this separate offense. Defendant re-

lies upon the language of *People* v. *Albertson,* 23 Cal.2d 550 [145 P.2d 7], where the court, after pointing out that evidence of other crimes may be admitted when it helps to disclose motive, intent, premeditation, guilty knowledge, malice or a common plan or scheme, stated that such proof, however, should be received with extreme caution and must show some connection between the other crime and the crime charged, and it must be shown with reasonable certainty that the accused committed the other crime. The test as given in that case is that the proof must afford " 'substantial evidence' " (p. 579) that the prior offense was in fact committed by the defendant. The evidence that Winn and defendant were attempting on March 22d to steal cigarettes and were only deterred by the fact that Winn assumed that the store manager, whom he saw telephoning and watching him, was calling the police, is substantial and meets that test. Comparing the *modus operandi* between the attempted crime and that charged we find it to be the same. In both the same two persons were involved in a common plan, the same criminal intent appeared, Pic-N-Pac Markets were involved, the same car, which belonged to defendant, used, and even the same brand of cigarettes chosen. See *People* v. *Grimes,* 113 Cal.App.2d 365 [248 P.2d 130], which discusses the effect of similar *modus operandi* and also points out that the question of whether the other offense shows a general pattern, scheme, or plan and are sufficiently similar and possess a sufficiently high degree of common features with the act charged to warrant the inference that if the defendant committed the other acts he committed the act charged, is a primary question for the trial court to determine and then to instruct the jury as to the limited purpose for which the evidence is admitted. This the court did in our case.

(c) Impeachment.

■ Plaintiff called as its witness defendant's brother-in-law Watts, confined in the Alameda County Prison Farm for "Vag addict and petty theft." Plaintiff asked without objection "have you been involved in taking merchandise from various stores in this area with your brother-in-law?" The witness said "No." Thereupon, claiming surprise and damage, plaintiff asked, again without objection and in some detail, if the witness had not told the examiner and Inspector McDonough that he had, and that he, the defendant and Winn had done so. The witness first said he did not remember. Then he made various answers, in one of which

he admitted stating that he had been in stores with defendant on two occasions for the purpose of "boosting" (stealing), but it is not clear whether he admitted stating that defendant was a party to the intended "boosting" or not, or whether he alone was engaged in the "boosting." Again he denied making any statement involving defendant, and once more said he did not remember doing so. Watts admitted stating that defendant waited for him in the car while he went in to "boost" the Pic-N-Pac store and that defendant knew Watts went in for that purpose. He also denied saying so, and then stated he could not remember saying so. He definitely denied that defendant knew about the "boosting" although defendant brought him to the store on March 22d* and waited for him. Finally, when asked concerning a conversation with Inspector Bishop, which had been referred to in the conversation with the district attorney and Inspector McDonough, Watts practically admitted making similar statements to those above mentioned and said he might have said them to get "some weight off my shoulders" and then that he could have been lying.

The only objection to this line of questioning made by defendant was after plaintiff had asked several impeaching questions, defendant said "Counsel claims surprise but it appears that there shouldn't be any surprise." The court permitted further questioning. Thereafter plaintiff called Inspector McDonough who, after objection by defendant that Watts had said nothing to be impeached about, testified to Watts' statements to the effect that he and defendant had stolen from two Pic-N-Pac markets. The court instructed that this evidence was admitted solely for impeachment purposes.

Defendant states in his closing brief "No question is raised on this appeal as to *surprise or materiality of the evidence,* the sole problem to be determined is whether Watts' testimony prejudiced the people's case and warranted his impeachment." (Emphasis added.) In support of his contention that Watts' testimony was not damaging, defendant quotes from *People* v. *Spinosa,* 115 Cal.App.2d 659, 667 [252 P.2d 409],

---

*It is not clear whether Watts was with defendant and Winn at the store on March 22nd when the license number of defendant's car was taken or whether this was a second attempt to "boost" the store on the same day. As there apparently was only one incident in which the store employees took defendant's car license number and Watts said it was taken while he was there, probably there was only one incident that day.

a quotation taken from *People* v. *LeBeau*, 39 Cal.2d 146 [245 P.2d 302], to the effect that to determine whether a negative answer has actually damaged the party calling the witness the facts of the case must be considered. Here Watts was called by plaintiff to prove that defendant, Winn and Watts were engaged in a pattern of stealing from Pic-N-Pac markets. Unexpectedly he denied when asked concerning defendant and himself that they were so engaged. No objection was raised to questioning him concerning contradictory statements claimed to have been made by him. During the course of such questioning he denied, admitted and then could not remember making such statements. Moreover, he flatly denied that defendant had knowingly participated. To have left the matter there would have been exceedingly damaging to the prosecution. They had called a witness who, although he backed and filled on the question of what statements he had made, positively stated that defendant was not implicated in a similar crime. Thus, unless impeached, Watts' testimony was favorable to the defendant on a subject which defendant concedes was material. Thus the impeaching evidence was admissible to neutralize that favorable evidence. As we said in *People* v. *Spinosa, supra,* 115 Cal.App.2d at page 666, "There are many cases holding that negative testimony can be damaging within the meaning of the impeaching rule." This is that type of case. ■ Impeachment by contradictory statements, of course, does not prove the existence of the facts mentioned in the statement to be contradicted, but may be considered for the purpose only of neutralizing the effect of the witness' statement upon the trial (*People* v. *Newson,* 37 Cal.2d 34, 45-46 [230 P.2d 618]), and the court here so instructed the jury. ■ "The evidence should have been admitted. To permit impeachment of one's own witness in this state, three elements must exist: (1) damage to the party calling the witness; (2) materiality of the evidence; and (3) surprise at his present testimony." (*People* v. *Spinosa, supra,* 115 Cal.App.2d at p. 665; see also *People* v. *LeBeau, supra,* 39 Cal.2d 146, 148. Those elements appear here.

■ The fact that Watts stated among other answers that he did not remember making the statement would not prevent plaintiff from showing that he did make it. "When a witness testifies that he does not remember his previous statements, it is competent to prove them for the purpose of impeachment." (*People* v. *Bjornsen,* 79 Cal.App.2d 519, 535 [180 P.2d 443].)

2. *Corroboration.*

██ The testimony of an accomplice must be "corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense . . ." (Pen. Code, § 1111.)

██ Other than the testimony of Winn, there was evidence tending to prove the conspiracy. Defendant and Winn were together in a Pic-N-Pac market in El Cerrito attempting to steal cigarettes. They drove away from the market in the same car, belonging to defendant, in which defendant drove Winn to the Berkeley market and in which defendant followed the escaping Winn, honking at him. ██ "The corroborative evidence may be slight and entitled to little consideration when standing alone . . ." It " '. . . need not be direct nor extend to every fact and detail. It may be circumstantial and is sufficient, even though slight, if it tend to connect the defendant with the commission of the crime.' " (*People* v. *Wayne,* 41 Cal.2d 814, 822 [264 P.2d 547].)

██ Another way of stating the rule is: "The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth." (*People* v. *MacEwing,* 45 Cal.2d 218, 224 [288 P.2d 257].) ██ The corroboration was sufficient.

Judgment affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.