[Crim. No. 6136. Second Dist., Div. Two. Oct. 17, 1958.]

THE PEOPLE, Respondent, v. BILLY OTIS McCARTY, Appellant.

Erich Auerbach, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, Roy A. Gustafson, District Attorney (Ventura), and Andrew J. Marsh, Deputy District Attorney, for Respondent.

HERNDON, J.—Convicted by a jury of second degree robbery, defendant seeks a reversal of the judgment on the basis of two contentions: (1) that the trial court erred in admitting evidence tending to prove that he was guilty of three crimes other than that for which he was on trial, and (2) that defendant's arrest in Los Angeles County by an officer from Ventura County without a warrant was invalid and that evidence procured in the incidental search was improperly admitted.

The sufficiency of the evidence to sustain the verdict being clear and unchallenged, the facts may be briefly stated. On May 21, 1957, at about 8:30 p. m. Rena Lively was the sole employee in charge of the Western Union office in Oxnard, California. Miss Lively testified that defendant entered the office just as she had finished dealing with two Mexican Nationals who promptly left the office, leaving her alone with

the defendant. Defendant inquired whether she had a money order for one Weber. After checking her files, she informed defendant that she had no such money order. Thereupon, the defendant pulled a gun and in a low voice ordered her to turn over her money to him. He kept the gun partially concealed by his coat so that she was able to see only a portion of it. Miss Lively testified that she was frightened and that she promptly complied by giving defendant the money as demanded. After taking the money, defendant followed her to a restroom and ordered her to remain inside. She stated that the defendant was polite, calm and quiet spoken. He was wearing a light blue suit, a white shirt and no tie. One Richard Martin, a taxi driver, testified that he saw defendant in the Western Union office between 8:20 p. m. and 8:30 p. m. on the night of the robbery. He stated that defendant was in the office at the time the Mexican customers were present.

Detective Sergeant Patton of the Oxnard police department testified that on the evening of May 27, 1957, he showed a photograph of defendant to Miss Lively who stated that he was the man who had robbed her. A few hours later, at approximately 2:20 a. m., Sergeant Patton and another Ventura police officer observed the defendant in Lynwood, California, driving an automobile. They stopped him near his home, placed him under arrest for robbery and proceeded to search his car. The officers had no search warrant nor arrest warrant at the time. The search of defendant's car produced a dark blue suit, a straw hat and a toy pistol. Defendant told the officers he had found the toy pistol on the lawn that morning and intended to give it to a friend's child. When accused by the officers of robbing the Western Union office in Oxnard, defendant denied it. Defendant was taken briefly to the Lynwood police department and was then transported to the Oxnard police department. Testifying in his own defense, defendant admitted that he had been convicted of armed robbery in Los Angeles County on March 17, 1954, and had been incarcerated for that crime, but had been placed on parole in March of 1957. He testified that between 8 p. m. on May 21, 1957, the night of the Oxnard robbery, and 2 a. m. of the following day he was in a bar at Lynwood, California, during which time he was engaged in negotiating for the purchase of a car from the bartender. He denied that he was ever in the Western Union office at Oxnard at any time. The bartender gave testimony corroborating defendant's alibi.

Over defendant's objection, the trial court admitted evi-

dence tending to prove that defendant was guilty of three robberies in addition to the one with which he was then charged. Miss Margaret Brislane and George Howell, both Western Union employees, testified that on April 15, 1957, at 1:20 a. m. defendant robbed Miss Brislane in the Western Union office located at 741 South Flower Street in Los Angeles. Defendant denied being in this Western Union office at any time during that day. He testified that at the time of that robbery he was in Hollywood in a bar.

Mrs. Patty Dunagan and Mrs. Willard Jordan, Western Union employees, testified that on May 27, 1957, at 10:40 p. m. defendant attempted to rob Mrs. Dunagan in the Western Union office at Santa Ana, California, but left without taking any money when the victim feigned a faint. The defendant denied that he had been in the Western Union office at Santa Ana at any time on May 27, and testified that at the time in question he was in a bar in Norwalk.

Mrs. Mary Ward and Mrs. Elaine Bonar, both Western Union employees, testified that defendant robbed Mrs. Ward in the Western Union office in Wilmington, California, on May 10, 1957, at 2 p. m. Defendant denied that he had been in that office of Western Union at any time, and testified that at the approximate time of that robbery he was in the Lynwood branch of the Bank of America and that after leaving the bank he had gone to the Clover Room, a bar in the same city where he had stayed ''for a while.''

 In urging that the trial court committed prejudicial error in receiving evidence of the other robberies, defendant relies mainly upon *People* v. *Channell*, 136 Cal.App.2d 99, 111-113 [288 P.2d 326] ; *People* v. *Lapin*, 138 Cal.App.2d 251, 259 [291 P.2d 575], and *People* v. *McCullough*, 158 Cal.App. 2d 310, 313 [322 P.2d 289]. These cases apply the rule ''. . . that evidence of a distinct, substantive offense cannot be received unless there is some clear connection between that offense and the other charged from which it may be logically inferred that if guilty of one he must be guilty of the other.''

Since defendant denied the robbery and offered the defense of an alibi, it is obvious that the sole issue determinative of defendant's guilt or innocence was the question of his identity as the robber. In other words, the essential question was whether the prosecution witnesses were mistaken in their identification of the defendant as the perpetrator of the crime with which he was charged. The test of admissibility of evidence of other crimes for the purpose of identifying the

defendant was stated as follows in *People* v. *Grimes,* 113 Cal. App.2d 365, 371 [248 P.2d 130] : '' [W]hether the facts pertaining to the other offenses allowed to be proved, show a general pattern, scheme, or plan, and are sufficiently similar and possess a sufficiently high degree of common features with the act charged to warrant the inference that if the defendant committed the other acts he committed the act charged.'' In *People* v. *Peete,* 28 Cal.2d 306, 318 [169 P.2d 924], it was held that evidence of another crime showing a similar *modus operandi* was admissible as tending to identify the defendant as the perpetrator of the crime immediately charged.

The evidence in the case at bar portrayed a series of four robberies, including the one charged, so similar in pattern and involving a *modus operandi* with so many distinctive and common features that the correctness of the trial court's ruling is not open to serious question. Whether proffered evidence of other crimes satisfies the applicable test is primarily a question for the trial court. (*People* v. *Grimes, supra,* 113 Cal.App.2d 365, 371; *People* v. *Roach,* 148 Cal.App. 2d 364, 368 [306 P.2d 523]; *cf. People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924].)

All four robberies were perpetrated within a period of six weeks. In addition to the fact that all four robberies involved Western Union offices, the following similarities appear: (1) the approach to all four robberies was similar in that in each case before demanding the money, the perpetrator made a request of his victim that would allow him to survey the premises. In Wilmington, Santa Ana and Oxnard the defendant asked each of the respective victims whether she had a money order for a certain named person. In Los Angeles, he asked the victim for change for a $5.00 bill. (2) During all four robberies the defendant was dressed in a similar and distinctive fashion in that on all occasions he was described as being neatly dressed, wearing either a light blue or dark blue suit without tie. (3) The weapon used and the manner of its use were similar in all four robberies in that on all occasions the defendant was armed with a gun and in each instance he made some apparent attempt to keep the weapon partially concealed from the victim. (4) The words and forms of expression used by defendant were remarkably similar in all instances. On each occasion defendant assured his victim that she would not be hurt if she complied with his demands. (5) During all the robberies, the defendant spoke in a very low tone of voice, so inaudible in fact that in three

of the instances he had to repeat himself at least twice. (6) During all four robberies, the defendant exhibited similar mannerisms and was uniformly described as quiet, calm, mannerly and polite. (7) The victims of all the robberies were similar, being in each instance a woman employee of Western Union.

A comparison of the facts of the instant case with those appearing in the cited decisions shows that the ''sufficient common features'' test was more than adequately fulfilled in the instant case. (*Cf. People* v. *Grimes, supra,* 113 Cal.App. 2d 365, 371; *People* v. *Roach,* 148 Cal.App.2d 364, 368 [306 P.2d 523]; *People* v. *Mazza,* 135 Cal.App.2d 587, 598-599 [287 P.2d 798].)

Defendant strongly argues that the trial court abused its discretion in admitting an excessive *quantity* of evidence to show the common plan or design. The substance of the argument is indicated by the following quotation from defendant's reply brief: ''It is however, of extreme importance to emphasize that assuming, *arguendo,* that evidence of other crimes was admissible under Respondent's theory that it was relevant to prove a design or scheme, nonetheless the trial court indulged in a prejudicial abuse of discretion in allowing so great a mass of testimony related to such other offenses to be introduced. For even if it be conceded that some evidence of other crimes is admissible, in support of the People's case, nevertheless the Court must exercise a sound judicial discretion in limiting the quantum of such evidence so that defendant's right to be tried only for the offense committed, be not unduly prejudiced and vitiated.''

We hold that the foregoing argument must be rejected. Had the prosecution limited its evidence to only one or two of the other similar robberies, defendant undoubtedly would have argued that the proven similarities were merely coincidental and that the examples were too few to establish a general plan or a common design. The prosecutor in this case cannot fairly be charged with excessive zeal in offering a sufficient quantum of incriminating evidence to remove any reasonable basis for obviously-to-be-anticipated arguments and to satisfy a jury beyond a reasonable doubt of defendant's identity as the perpetrator of the crime charged. By the same token, the trial court did not abuse its discretion in admitting this quantum of evidence. Indeed, there seems to be an element of inconsistency in defendant's arguments (1) that an

insufficient number of similar features were shown to establish a common pattern or design and (2) that the court erred in admitting an excessive cumulation of evidence directed to that purpose.

█ We find no merit in defendant's contention that his arrest in Los Angeles by a police officer from Ventura County was unlawful because the officer was without a warrant. Without citation to any supporting authority, defendant urges ". . . that the spirit of the law requires that where an officer is advised of the whereabouts of a suspect in another county, he is under a duty, at least absent emergency circumstances, to procure a warrant before making an arrest outside the territorial limits of his office." Defendant properly concedes that the fact that an officer could have obtained a warrant does not of itself render illegal an arrest or an incidental search and seizure without a warrant. (*People* v. *Winston,* 46 Cal.2d 151, 162, 163 [293 P.2d 40] ; *People* v. *Chapman,* 151 Cal.App.2d 59, 62 [311 P.2d 190] ; *Lorenzen* v. *Superior Court,* 150 Cal.App.2d 506, 512 [310 P.2d 180].) The authority of the arresting officer in the instant case cannot be denied. It is undisputed that he was a peace officer (Pen. Code, § 817) and as such he had authority under Penal Code, section 836, subdivision 3, to make the arrest without a warrant if a felony had in fact been committed and he had reasonable cause to believe that defendant had committed it. These conditions were fulfilled; the actual commission of a felony is unquestioned and the victim had made a positive identification of the defendant as the perpetrator in the presence of the officer only a few hours before the arrest was made. Under these circumstances a private person could have made this arrest without a warrant. (Pen. Code, § 837, subd. 3.) It would appear anomalous to hold unlawful an arrest by a peace officer when the same arrest by a private citizen clearly would have been lawful. (*People* v. *Ball,* 162 Cal. App.2d 465, 468 [328 P.2d 276].)

█ It appearing that after his arrest defendant was taken before a magistrate in Ventura County, the further contention is made that the arrest was rendered unlawful *ab initio* by the failure of the arresting officer promptly to take defendant before the nearest or most accessible magistrate in the county in which the arrest was made, as required by provisions of section 849 Penal Code then in effect. Prior to its amendment in 1957, section 849 appeared to be in conflict with section 145 of the same code. Under section 145 the

arresting officer is guilty of a misdemeanor if he delays taking the arrested person before a magistrate having jurisdiction to take his examination. Under article I, section 8, of the California Constitution, only a magistrate in the county in which the offense charged is triable has jurisdiction to take the examination. This apparent conflict was eliminated by the 1957 amendment to section 849, which requires the arrested person to be taken before a magistrate in the county in which the offense is triable.

But assuming, *arguendo*, that the officer's conduct in taking defendant before the Ventura County magistrate was unlawful, it would not follow that either the antecedent arrest or the search and seizure incidental thereto were illegal. There is nothing in the circumstances here shown to provide any basis for the application of the exclusionary rule of *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]. ██ Unlawful activity which does not produce the evidence sought to be suppressed and which is entirely unrelated and collateral to the securing of such evidence affords no basis for applying a rule of exclusion. (*People* v. *Maddox*, 46 Cal.2d 301, 305 [294 P.2d 6] ; *People* v. *Martin*, 45 Cal.2d 755, 763 [290 P.2d 855] ; *People* v. *Boyles*, 45 Cal.2d 652, 654-655 [290 P.2d 535].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.