[Crim. No. 6991. Second Dist., Div. Three. Oct. 20, 1960.]

THE PEOPLE, Respondent, v. JAMES CLIFFORD De SWAN, Appellant.

Virgil V. Becker for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

SHINN, P. J.—James Clifford De Swan was charged by information with burglarizing an automobile belonging to Jack S. Gabrich. It was also alleged that he had previously been convicted of burglary and had served a term in state prison. He admitted the prior conviction. In a jury trial he was found guilty of second degree burglary and he appeals from the judgment.

There was evidence of the following facts: On June 1, 1959, Gabrich and a Miss Reed drove to Cabrillo Beach in the former's Thunderbird convertible. Gabrich parked and locked the car and rolled up the windows, leaving in the glove compartment a wallet containing his driver's license, various identification cards and $80 in bills. At about 2 p. m. Miss Reed looked up at the car and saw a man resembling defendant walk around it three or four times; the man was holding a white towel or tee shirt. Miss Reed then saw him enter an old dull-colored car and drive away. When Gabrich and his companion returned to the Thunderbird the window was cracked and forced open and the wallet was gone.

June 6th, Officer Robert Platt observed defendant walking around the cars parked in the Belmont Shore parking lot in Long Beach. De Swan looked into about 20 cars; he was carrying a white towel. After driving away in a dull-colored 1940 Pontiac, defendant returned, parked, approached a late model sedan and placed the towel against the window on the passenger's side. Then he went to another car and walked around it. The officer observed a red object protruding from the towel. As Platt approached him defendant got

into his own car and turned on the ignition. Platt identified himself and prevented defendant from starting the car. He retrieved the towel and a screw driver with a red wooden handle from the front seat. When asked for identification defendant exhibited Gabrich's driver's license; upon being asked to spell the name, he spelled it "Gabrech." Defendant told the officer that the car he was driving was owned by one Duncan, an attorney he had met in a bar the previous night. (It was stipulated that the car belonged to Duncan.) Platt retrieved Gabrich's wallet and placed De Swan under arrest. Defendant said that he was a bartender and a lock salesman. When taken to the police station defendant was recognized by another officer, but at first denied that his name was De Swan. He explained that he found the wallet in San Pedro.

Officer J. A. Henze had a conversation with defendant two days later. De Swan said that he did not know where he found the wallet, declined to explain why he was using Gabrich's identification, and denied being at Cabrillo Beach on June 1st. In a later conversation with Henze defendant said that he found the wallet wrapped inside a handkerchief in some shrubbery at the beach; he carried Gabrich's identification in case he was stopped by the police as he was afraid of his parole officer. He admitted being at Cabrillo Beach on June 1st but denied breaking into any cars.

Evidence was received over objection of previous burglaries committed by De Swan. The evidence related to car burglaries occurring in August 1954 and September and October 1956. There was introduced in evidence, over objection, the superior court file respecting a burglary conviction which defendant suffered in September 1954; this was the prior conviction which De Swan had admitted at his arraignment on the instant charge. A Mr. Boecker testified that on August 19, 1954, he parked his Chevrolet at the beach and locked it; when he returned the window had been broken into and a watch and diamond ring were missing. The following day defendant was arrested by a police officer of the City of Lynwood while looking into the latter's car; defendant was carrying a screw driver rolled in a towel. Police officers testified that while defendant was in custody from that arrest, he admitted burglarizing eight cars in Long Beach. At that time his fingerprints were compared by a police fingerprint expert with latent prints taken from three cars whose windows had been found broken open and the prints were determined to

be identical. Stolen property, including Boecker's ring, was found in defendant's apartment. In October 1956 defendant was arrested in a parking lot in Long Beach. His hand was cut; a screw driver and a bloodstained towel were found in his car. At that time defendant admitted one other burglary and during the subsequent investigation he guided the officers to a spot on the beach where he had buried wallets belonging to two of his victims.

Defendant testified that he spent the afternoon of June 1st in Los Angeles in the company of a Miss Turner and a Mr. Schwartz, who corroborated his testimony. On June 6th, he went to the Belmont Shore parking lot at the request of attorney Duncan, who employed him as an investigator, to find a man named Thwaits. Having forgotten the make of Thwaits' car he looked inside the cars on the lot for Thwaits' registration certificate. The screw driver was used to repair loose battery cables. Defendant denied having stated that he was at Cabrillo Beach on June 1st. He found Gabrich's wallet on June 4th. On cross-examination he admitted two prior felony convictions of burglary.

It is first contended that the court erred in receiving evidence that defendant had committed prior burglaries. The point is without merit. [██] Evidence of the commission of other crimes is admissible if it tends to establish guilt by showing that the accused has followed a similar method of operation in perpetrating both offenses. (*People* v. *McCarty*, 164 Cal.App.2d 322 [330 P.2d 484]; *People* v. *Brown*, 170 Cal.App.2d 80 [338 P.2d 504].) There can be no doubt that the same method was used in committing the various burglaries described by the witnesses in the present case.

██ It is also urged that the 1954 and 1956 burglaries were too remote in time to be relevant to the question of guilt of the 1959 burglary. But we cannot say that the earlier offenses were too remote. (*People* v. *George*, 169 Cal.App.2d 740 [338 P.2d 240] (seven years); *People* v. *Brown, supra*, 170 Cal.App.2d 80 (eight years).) Moreover, defendant spent a substantial part of the intervening years in state prison.

██ The objection to proof of the prior burglary conviction, which was alleged in the information, and which defendant had admitted, was not well taken. The fact that it had been admitted did not render the proof inadmissible. (*People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Grimes*, 113 Cal.App.2d 365 [248 P.2d 130].)

██ It is next contended that the district attorney was

guilty of misconduct in characterizing attorney Duncan as "late of Ventura County" on one occasion during the trial. It is argued that the reference was prejudicial to defendant in that it connected him with a notorious murder case. At defendant's request the prosecutor was admonished not to repeat the statement and we think the incident was of trivial significance.

It is finally contended that the district attorney was guilty of misconduct in making "inflammatory, vicious, vitriolic" statements in his argument to the jury. The point is not deserving of serious consideration. No reference is made in defendant's brief to any remarks claimed to be improper. Furthermore, no objection was interposed by his attorney to any of the prosecutor's statements. Although the failure to register an objection is ordinarily deemed a waiver of the right to complain on appeal, we have carefully examined the closing argument and have found nothing that exceeds the bounds of permissible comment on the evidence.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.