207 So.2d 104 (1968)
I.V. NASH
v.
STATE of Mississippi.
No. 44629.
Supreme Court of Mississippi.
February 12, 1968.
J.K. Henry, Union, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
*105 JONES, Justice:
This case comes from the Circuit Court of Scott County, where appellant was convicted for the second time (the first having been reversed by this Court) of manslaughter by culpable negligence in the operation of an automobile. The case on its first appeal here is reported as Nash v. State, 253 Miss. 715, 178 So.2d 867 (1965).
The facts as to the striking of the decedent as shown in this trial are substantially the same as those shown in the first trial, subject to this: the evidence here could only be construed as showing both cars having been struck on the left front fenders.
One of the assignments of error is that the court erred in admitting that testimony by the Sheriff and Deputy Sheriff of Scott County which included statements made by the appellant. This question requires a showing of other facts in evidence not in the previous appeal.
Soon after the accident, Mr. R.D. Simmons, Sheriff of Scott County, received a call from Mr. Bill Weaver, his deputy, telling of an accident not far from Sebastapol in Scott County. When the sheriff and his deputy arrived at the scene, the Marshal of Sebastapol was there and had ascertained that the car which had struck decedent belonged to the Nash boys. Only the car in which decedent was riding was still there, along with other evidence of the accident. The driver and occupants of the car belonging to the Nash boys were gone.
Mr. John Coleman, a highway patrolman, arrived, and the officers decided that the patrolman and marshal would search through the country roads in an effort to find Nash. The sheriff and his deputy would go to the home of the Nash boys' father and work from that end. They knew that a man, while stopped off the side of the highway, had been struck and killed by a car and that the driver had not stopped. They knew they were looking for I.V. Nash, but the record does not disclose whether they knew I.V. Nash personally.
The sheriff and his deputy went to the intersection of the road leading to Nash's father's home with Highway 21 in Neshoba County. They had searched about an hour before finding appellant. A car came from a little country road into Highway 21 and seemed about to come into the side road where the officers were but suddenly turned and headed north. The sheriff said "we" hollered at them and they stopped. Nash and some others were in the car. The officers told the occupants to get out because they wanted to talk to them. According to Mr. Simmons, the officers asked the occupants if they knew anything about the accident. Nash spoke up and said that there was no need to hold anybody else because he was the one the officers wanted. The sheriff testified that when they stopped the car, Nash immediately started talking, saying that he was the one they were looking for and that he killed his best friend. This statement was before any arrest. There had been no charge against Nash. After Nash had made these statements, the sheriff directed him to get into the officers' car. Nash was then taken to his father's home, permitted to go in for a few moments, and, upon returning, was taken to Scott County.
The testimony of the deputy, Mr. Weaver, was in accord with that of the sheriff, except he did not remember the sheriff's asking the occupants if they knew anything about the wreck. His recollection was that the sheriff asked if I.V. Nash was in the car.
Appellant argues that, because the officers had no authority to arrest outside Scott County, the arrest was illegal and any statements made by appellant would be inadmissible. It is argued also that the statements of appellant were made without his being advised of his constitutional rights.
The lower court held, as to the arrest, that the officers were in pursuit of a fleeing offender as authorized by Mississippi Code 1942 Annotated (1956) section 2477, reading in part:
If a person commit an offense and be pursued by a sheriff or constable, and *106 escape from the county of the officer, the officer may pursue and apprehend him in any county and take him to the county in which the offense was committed * * *.
The State argues that this ruling of the lower court is correct; but, if not, the sheriff had the right to make the arrest as a private citizen under Mississippi Code 1942 Annotated (1956) section 2470, reading in part:
An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. * * *
Whether or not the facts here meet the requirements of section 2477 is not here necessary to decide because the courts have held that an officer outside his jurisdiction, when not in "hot" pursuit, acts as a private citizen.
It is stated thus in 5 Am.Jur.2d Arrests section 50 (1962):
An officer who seeks to make an arrest without warrant outside his territory must be treated as a private person. Of course, his action will be lawful if the circumstances are such as would authorize a private person to make the arrest.
This rule is also recognized by Restatement (Second) of Torts section 121 (1965):
Subject to the rules stated in §§ 127-132, a peace officer acting within the limits of his appointment is privileged to arrest another without a warrant
(a) under any of the conditions which under the rules stated in §§ 119 and 120 give to a private person the privilege to arrest without a warrant * * *.
It is further stated on page 206 in the Comment on Clause (a):
The peace officer has all the privileges of arrest which, by the rules stated in §§ 119 and 120, are conferred upon one not a peace officer. In such a case, his privilege to arrest is not dependent upon his being a peace officer; and it is immaterial whether he purports to act in his capacity as peace officer or as a private person or whether he is or is not acting within the territorial or other limits of his designation.
The California Court, in People v. Alvarado, 208 Cal. App.2d 629, 25 Cal. Rptr. 437 (1962) stated it this way:
We assume, without deciding, that a Los Angeles police officer lacks the authority of a peace officer to make an arrest under Penal Code, section 836, when he is outside the city limits unless he is engaged in fresh pursuit or is executing a warrant authorizing such arrest. (See 8 Ops.Cal.Atty.Gen. 149; 6 C.J.S. Arrest § 12; 4 Am.Jur., Arrest, § 51). An arrest by a city policeman outside his territorial jurisdiction is unquestionably valid if made upon grounds which would authorize a lawful arrest by a private citizen. (People v. Burgess, 170 Cal. App.2d 36, 40, 338 P.2d 524; People v. McCarty, 164 Cal. App.2d 322, 328, 330 P.2d 484; People v. Ball, 162 Cal. App.2d 465, 468, 328 P.2d 276.)
The same court stated the rule in this manner in People v. McCarty, 164 Cal. App.2d 322, 330 P.2d 484 (1958):
We find no merit in defendant's contention that his arrest in Los Angeles by a police officer from Ventura County was unlawful because the officer was without a warrant. Without citation to any supporting authority, defendant urges "* * * that the spirit of the law requires that where an officer is advised of the whereabouts of a suspect in another county, he is under a duty, at least absent emergency circumstances, to procure a warrant before making an arrest outside *107 the territorial limits of his office." Defendant properly concedes that the fact that an officer could have obtained a warrant does not of itself render illegal an arrest or an incidental search and seizure without a warrant. People v. Winston, 46 Cal.2d 151, 162, 163, 293 P.2d 40; People v. Chapman, 151 Cal. App.2d 59, 62, 311 P.2d 190; Lorenzen v. Superior Court, 150 Cal. App.2d 506, 512, 310 P.2d 180. The authority of the arresting officer in the instant case cannot be denied. It is undisputed that he was a peace officer (Pen.Code, § 817) and as such he had authority under Penal Code § 836, subd. 3, to make the arrest without a warrant if a felony had in fact been committed and he had reasonable cause to believe that defendant had committed it. These conditions were fulfilled; the actual commission of a felony is unquestioned and the victim had made a positive identification of the defendant as the perpetrator in the presence of the officer only a few hours before the arrest was made. Under these circumstances a private person could have made this arrest without a warrant. Pen.Code, § 837, subd. 3. It would appear anomalous to hold unlawful an arrest by a peace officer when the same arrest by a private citizen clearly would have been lawful. People v. Ball, 162 Cal. App.2d 465, 328 P.2d 276.
Under the facts herein shown there was probable cause to believe (1) a felony had been committed and (2) that Nash was the guilty party. Howell v. Viener, 179 Miss. 872, 176 So. 731 (1937); Craft v. State, 202 Miss. 43, 30 So.2d 414 (1947). We conclude on the basis of the above cited authorities that the appellant's arrest was lawful since under the facts stated a private citizen had the right to arrest.
The argument as to the illegality of the arrest was coupled with that alleging the inadmissibility of appellant's statements as having been obtained by an unlawful arrest and without advising him of his constitutional rights.
It is undisputed, however, that the admissions by him were made spontaneously and immediately upon ascertaining that the officers were looking for him or investigating the accident. The sheriff and deputy did not know appellant was in the car until he advised them he was the one they were looking for. This statement, together with other statements, were made before any arrest was even attempted or suggested and before there was any opportunity to advise of constitutional rights.
As was held on the first appeal, the evidence was sufficient to withstand a motion for a directed verdict.
However, the first assignment of error, that the court erred in permitting the jury to separate, demands and requires another reversal of this case.
On the afternoon of the first day of the trial the attorneys requested time to secure authorities for argument on a legal question. Thereupon the court stated:
Gentlemen of the Jury, it is getting late. It would be impossible to finish this case today unless we ran way in the night, which isn't necessary. And I am going to excuse you and * * *.
Immediately appellant objected. The court overruled the objection and permitted the jury to disperse for the night.
The next morning when court reconvened, the appellant moved for a mistrial because the jury had been permitted to disperse overnight. This motion was overruled. This same ground was alleged in the motion for a new trial, which was also overruled. Permitting the jury to disperse was reversible error. Carter v. State, 78 Miss. 348, 29 So. 148 (1900); Grimsley v. State, 212 Miss. 229, 54 So.2d 277 (1951).
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, BRADY and SMITH, JJ., concur.