[Civ. No. 17605. First Dist., Div. One. Apr. 29, 1957.]

HENRY LORENZEN, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Joseph C. Haughey for Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

BRAY, J.—This petition for writ of prohibition raises two questions: 1. Does information from a reliable informant *alone* justify an arrest without a warrant and a search and seizure? 2. Does delay in using that information affect the validity of the arrest, search and seizure?

## RECORD

October 24, 1956, complaint filed in the municipal court charging petitioner with violations (1) of section 337a, subdivision 2, Penal Code (occupying premises for purposes of recording bets) ; (2) of section 337a, subdivision 4 (recording bets) ; and (3) of section 337a, subdivision 6 (accepting bets). Thereafter a preliminary examination was held at which petitioner moved to exclude all evidence taken at the time of arrest on the ground of unlawful search and seizure. The motion was denied and petitioner was held to answer to the superior court. On arraignment on an information charging all three offenses, petitioner moved for a dismissal of said information, based on the contentions hereafter discussed. The motion was denied.

## EVIDENCE

Police Officer Martin testified that approximately two weeks prior to the arrest, he received certain information from a confidential informant, whom he had known for several years. For approximately three years this informant had been giving him information concerning similar cases and other criminal matters upon which Martin had acted and found his informant reliable. The information given him and two other police officers on this occasion was that one Henry Lorenzen was

distributing football pool tickets in the Mission district.* The informant described Lorenzen's personal appearance and stated that he was a postal employee at a particular substation, and that Lorenzen customarily received through the mail and personally distributed these tickets on Tuesdays after working hours. The distribution was made to various taverns, florists and small business places in a certain area of the Mission district. On Fridays he would go over the route again, pick up the stubs and money for the tickets. The informant gave the make and license number of Lorenzen's automobile. He stated that Lorenzen lived in an apartment house on Church Street near 20th. The informant did not disclose the source of his information. The officers ascertained petitioner's correct address through the city directory. On Tuesday afternoon Martin and three other police officers went to the vicinity of the apartment house in which petitioner lived, stationing themselves around the premises. The apartment house garage accommodates approximately 20 cars. They saw a man drive into the garage. Both he and the automobile fitted the descriptions given by the informant. Petitioner got out of the car and went into the house through an inside doorway. Five to ten minutes thereafter petitioner returned through the same doorway and walked towards his car. In his right hand he carried a small package (about 3½ by 8 by 1½ inches). Martin saw petitioner toss this package into the seat of the automobile. Martin approached petitioner and asked if he was "Mr. Lorenzen." Petitioner said he was. Identifying himself as a police officer Martin placed him under arrest. Martin then asked petitioner to step out of the car, which he did. Martin then seized the package above mentioned. It contained blank football pool tickets. The other officers gathered around and one of them asked petitioner if there was anyone else in his apartment. He replied that there was not. The officer asked petitioner if he would mind showing them his apartment. He said "all right" and handed the officer the keys. All then went upstairs to petitioner's apartment, where they found papers and paraphernalia which an officer testified was for the purpose of recording and registering bets and were a part of the modus operandi of football pools. Petitioner refused to answer questions about the foot-

*Mostly throughout the transcript these tickets are referred to as "football tickets." The record and briefs plainly show that everyone at the preliminary examination considered the references to be to football *pool* tickets.

ball pool operation or the tickets. A second police officer corroborated Martin's testimony as to the occurrences at the apartment. A later search of the automobile revealed nothing incriminating. At no time did the officers have either a warrant for petitioner's arrest or a search warrant.

The record raises clearly the issue—may police officers make an arrest without a warrant and a search and seizure based only upon information from a confidential informant whose information has proved reliable in the past, that an individual is committing a felony?

1. *Propriety of Arrest.*

This is not a new question in California. It has been decided so many times that such information is sufficient that it is an open question no longer.

Cases holding that an officer is justified in making an arrest acting solely upon information from an informant where that informant is known to the arresting officer and is believed by the officer to be trustworthy and reliable are: *People* v. *Vice,* 147 Cal.App.2d 269, 272 [305 P.2d 270] ; *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13, 23 [300 P.2d 222] ; *People* v. *Gonzales,* 141 Cal.App.2d 604, 606 [297 P.2d 50] ; *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36] ; *People* v. *Holguin,* 145 Cal.App.2d 520, 522-523 [302 P.2d 635] ; *People* v. *Penson,* 148 Cal.App.2d 537, 539 [307 P.2d 24] ; *People* v. *Soto,* 144 Cal.App.2d 294, 299 [301 P.2d 45] ; *People* v. *Garnett,* 148 Cal.App.2d 280, 283 [306 P.2d 571] ; *People* v. *Guerrera,* 149 Cal.App.2d 133, 136 [307 P.2d 940].

*People* v. *Goodo,* 147 Cal.App.2d 7 [304 P.2d 776], is not in point. There the informant was one whom the police officers had not previously known, had any contact with, nor did they "know his reputation or any other fact which would assist in evaluating his reliability." (P. 9.) The court, however, referred to the statement in *Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294, to the effect that past experience with an informant showing him to be reliable would justify the police in acting on the information supplied by him. (*People* v. *Schraier,* 141 Cal.App.2d 600 [297 P.2d 81], cited by petitioner, is not in point here, because it did not deal with information supplied by an informant. In fact the court stated "no reliable informant had reported a fact or such a suspicious circumstance as would reasonably have warranted action . . ." (P. 603.)

■ Petitioner contends that the failure of the officers to write down the information given them by the informant establishes that they did not believe the informant and that therefore he was not a "reliable" informant. This was a factual matter to be and which was resolved by the committing magistrate. "The weight to be accorded the information upon which the officer acts in making an arrest for a felony is to be determined by the trial court in the exercise of a sound discretion. (*United States* v. *Li Fat Tong,* 152 F.2d 650, 652.)" (*People* v. *Gonzales, supra,* 141 Cal.App.2d at p. 607.)

■■ An additional contention made by petitioner is answered in *People* v. *Garnett, supra,* 148 Cal.App.2d at p. 284: "Appellant assumes that police officers would, to suit their convenience, make use of fictitious informants as bases for illegal searches and seizures. Such assumption is unauthorized and is contrary to statutory presumptions that official duty has been regularly performed and that the law has been obeyed. . . . When an officer has in good faith testified that he had acted upon the information of an unnamed person and that such informant was reliable, he has thereby established a firm basis for his search of a suspect's premises. (Pen. Code, § 836.) . . . So long as the good faith of the arresting officer with respect to the reliability of his informant satisfies the scrutiny of the trial judge, he is in substantially the same position as if he had come with a warrant of arrest."

2. *Delay.*

Approximately two weeks elapsed between the receipt of information by the officers and the arrest. The leading case upon the question of the effect of failure to get a search warrant where there is time to get one seems to be *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653]. There was a warrant of arrest issued in that case. The contention was made that it was not sufficient. The court held that it was, but went on to state that, assuming it to be insufficient, the officers nevertheless were justified in making the arrest. The further contention was made that a delay of some five days in obtaining it after information of the crime was received, and particularly in not getting a search warrant at all, made the search and seizure illegal. ■ Concerning the failure to get a search warrant the court said* (pp. 65-66): "A rule of thumb requiring that a search warrant

---

*Five members of the court joined in the opinion; one member did not participate, and three dissented.

always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a *sina qua non* to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody. It becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that *Trupiano* v. *United States*, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case."

In *Trowbridge* v. *Superior Court, supra,* 144 Cal.App.2d 13, 23, the court answered a similar contention to the one made here: "It was also contended that there was no good reason why the officers should not have waited and secured a search warrant in this particular case. No one would fairly argue that a magistrate would have refused to issue a warrant if the same facts and statements had been presented to him as were presented to the officer. It was recently appropriately

said in *People* v. *Allen,* 142 Cal.App.2d 267, at page 280 [298 P.2d 714]:

" ' . . . Merely because the officers could have obtained a search warrant does not render illegal their seizure without one. Even though officers have time to procure a search warrant to search the person or premises of a suspect, if his arrest is justifiable, a search of his premises and his person is reasonable as incidental to a lawful arrest. (*United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653]; *Trupiano* v. *United States,* 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663].) The Fourth Amendment does not forbid all searches, but only unreasonable searches. The authors of the Bill of Rights did not suggest or imply that when law enforcing agencies have learned that a person has committed a felony, they must await the convenience of the offender before moving into his lair. They were wrestling with the problems that had arisen from the arbitrary searches by the minions of an arbitrary despot. They had not conceived of the difficulties to be encountered by a generous government in dealing with arbitrary criminals in a complex society with countless avenues whereby to secrete the evidences of their crimes. But clearly they did reckon upon the apprehension of criminals and did not aim to inhibit prompt, reasonable searches to the end that after the robber has been arrested the officer might without a search warrant make a search as an incident of the arrest . . .' "

In the Allen case the exact time when the officers obtained the information upon which they acted is not given. The case states that it was stipulated that prior to December 16, 1954 (the date of the search and seizure) the officers had reasonable cause to believe that Allen had committed a felony.

Applying the test of the Rabinowitz case, namely, whether under all of the circumstances of the case the failure to get a warrant of arrest or a search warrant in a period of two weeks was unreasonable, we cannot say that it was. This was primarily a fact question for the committing magistrate to decide. The information given the officers by the informant did not give petitioner's exact address. To obtain it they were required to make further investigation. They were informed that Lorenzen received the football pool tickets on Tuesdays, at which time he distributed them. Martin testified that because of that fact they chose Tuesday as the best time to go to peitioner's residence. We cannot say that they were not justified in waiting for such a day to act, nor that as a matter of law, permitting an elapse of approximately two weeks with-

out getting a warrant, is without the "flexibility" which the Rabinowitz case holds "will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential" (p. 65), or unreasonable.

It should be pointed out that in this case we are dealing merely with a situation in which at the preliminary examination, where the burden of showing reasonable grounds for the arrest and search shifts to the prosecution when it appears that the arrest and search were made without a warrant, a prima facie case of reasonable arrest and search is made when the arresting officer testifies that he was told by a reliable informant facts warranting an arrest and search. The officer is not seeking to prove the truth of those facts but simply that he was in possession of certain facts that made it reasonable to make the arrest and search. In order that no implications might be attempted to be drawn from our decision under the facts of this case, as to what our ruling might be under different facts, we expressly call attention to the record showing that there is not involved herein the question of a denial of a demand by the defendant for the name of the informant. No such demand was made and therefore we neither directly nor indirectly are determining what the legal situation would be in a case where such demand is made.

The alternative writ is discharged and the petition denied.

Peters, P. J., and Wood (Fred B.), J., concurred.