**Edward BUTLER and Donald Cahee,
Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16277.**

United States Court of Appeals
Ninth Circuit.

Nov. 30, 1959.

Allan Brotsky, San Francisco, Cal., for appellant.

Lynn J. Gillard, U. S. Atty., John Kaplan, John H. Riordan, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before *MAGRUDER, BARNES and JERTBERG, Circuit Judges.

* Former Chief Judge of the First Circuit, sitting by assignment.

BARNES, Circuit Judge.

Appellant Butler was charged in two counts of (1) illegal transfer of marijuana, and (2) concealing or receiving illegally imported marijuana. The first count was dismissed, and he was convicted on the second count by the trial court sitting without a jury. 21 U.S.C.A. § 176a.

Appellant Cahee was charged and convicted of concealing marijuana on which no tax had been paid by the same court sitting without a jury. 26 U.S.C. § 4744.

This appeal follows. 28 U.S.C. § 1291.

### Facts

On May 27, 1958, during the afternoon, a federal narcotics agent allegedly learned from an informer that appellant Butler was selling marijuana. About 7:30 P.M. of May 27th, 1958, the agent learned from the same informant that within the past hour of that same day, he (the informer) had seen marijuana in Butler's apartment.

At 9:00 P.M. the federal narcotics agent, and others, obtained entrance to Butler's apartment by a ruse, arrested Butler, and upon questioning Cahee arrested him after the latter admitted possessing marijuana that he had just purchased from Butler. Marijuana was found on Cahee, and marijuana was found in the apartment.

At no time before entering the apartment did the federal agents obtain a warrant of search or arrest, although the agent had made an effort by telephone to reach the United States Commissioner, but being unable to reach him had, on advice of the United States Attorney, proceeded with the raid.

### I.

Appellants in their first allegation of error ask us to reconsider the rulings of this Court in Caudillo v. United States, 9 Cir., 1958, 253 F.2d 513, wherein we sustained the constitutionality of the presumption, under the facts of that case, that unexplained possession of marijuana was sufficient to authorize a conviction under 21 U.S.C.A. § 176a, and Bradford v. United States, 9 Cir., 1959, 271 F.2d 58 (reversed on other grounds on rehearing, 271 F.2d 65), in which this Court reaffirmed that proposition.

Appellants urge that even though they may fail to change this Court's broad holding as to the constitutionality of the "possession" clause in the last paragraph of § 176a, this Court should interpret "*the* marijuana" in the possession clause to refer to illegally imported marijuana, and hence there must be some evidence of illegal importation of the marijuana seized before any presumption sufficient to authorize conviction can come into existence.

The government has no practical method to trace back through one or a dozen hands to the person who originally grew the weed. If it had the means to so trace the paths of commerce to the plant's origin, there would be no need of any rule of evidence presuming importation, for importation could either be proved by the government, or the government would establish the marijuana as home-grown, and the government's case would fail.

Appellants' counsel urges that in the possession clause of § 176a Congress purposely uses the word "the" with reference to marijuana, and not the word "any." We point out that the first previous reference to imported marijuana in § 176a, after the word marijuana is first mentioned, is to "*such* marijuana." (Emphasis added.) When referring to marijuana in the possession paragraph, the Congress has apparently intentionally and carefully referred, not to *such (i. e., imported)* marijuana, but to "*the* marijuana in his possession." (Emphasis added.)

The presumption created is "a rule, not of substantive law at all, but merely of evidence." Ng Choy Fong v. United States, 9 Cir., 1917, 245 F. 305, 307; Stein v. United States, 9 Cir., 1948, 166 F.2d 851, certiorari denied 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768. There would be no purpose in creating such an evidentiary rule were it applicable only

to marijuana proved to have been imported illegally. We refuse to follow appellants' attempted distinction.

Furthermore, there is physical evidence in the record before us of the same fact this Court emphasized in Caudillo v. United States, supra; namely, that the marijuana here seized was "unmanicured." In Caudillo the marijuana was there described as " 'unmanicured,' *i. e.,* it had seeds and stems and sticks mixed with the marijuana leaves." [253 F.2d 515.] In Caudillo there was testimony that "manicured" marijuana is seldom imported; and that "unmanicured" is seldom produced in the United States.

The reason is obvious. Marijuana is traditionally sold by weight, or in cigarettes by bulk. There exists no reason for a seller to remove or exclude the seeds, stems and sticks from marijuana grown outside the United States for to the extent it may be "manicured," its body and weight is reduced as is its value and subsequent sale's price. Thus there is the motive of financial profit for those dealing with the weed to deal in "unmanicured" marijuana.

Within the United States both federal and state enforcement officers are continually watching for the illegal growing plant.[1] As a result its leaves, capable of producing marijuana, are stripped off and dried long before the plant reaches its maturity when the plant's flowering top contains the seeds which are characteristic of the weed. Thus the usual domestic product contains only the crumbled dried leaf.

It is true that in this case, no enforcement officer testified to the nature of the marijuana as being either "manicured" or "unmanicured," or otherwise. Neither side asked whether it was or was not manicured. The trial judge did not describe it. So, no words in the record describe it as other or more than "marijuana."

■ But this Court has seen the government's Exhibits I (introduced against

Cahee alone), and II, III, V, VI and VII (introduced against Butler alone), and has examined them. They each (with the exception of Exhibit VI, the thirty-seven rolled cigarettes) demonstrate without question the presence of a substantial percentage of sticks, stems and seeds making up the whole. Thus, there exists "some evidence" sufficient "in common experience" to enable the trier of fact to draw the inference that the marijuana was imported. There thus exists a rational connection between the fact proved and the ultimate fact presumed. Thus the reasoning of Tot v. United States, 1943, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519, is inapplicable, and the permissible inference of importation based on unexplained possession valid.

## II.

■ Appellants' second point is that the evidence obtained in the allegedly unlawful search and seizure was inadmissible as to either defendant. Appellants' counsel states in respect to this point (although we do not so narrowly read Draper):

"Since Draper v. United States, 1959 [358 U.S. 307], 79 S.Ct. 329 [3 L.Ed.2d 327] it would appear that the mere word of an informer, unsupported by other evidence known to the officers, would constitute, for an arrest or search without warrant, the 'probable cause' and 'reasonable grounds' required by the Fourth Amendment and the Narcotic Control Act of 1956, 26 U.S.C.A. § 7607, respectively. On the surface, therefore, the information imparted to Feldman, the agent, by William James, the informer, would seem to insulate from attack the arrest and search here, even though made before the rule of Draper was announced."

Appellants then acknowledge that in both Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, and this case, the informer did not testify; in

---

1. California Health and Safety Code, § 11530.

Draper, because he had died, and in this case, because neither side despite diligent effort could locate him so that he might be subpoenaed.[2] A further attempt by appellants to avoid the holding of Draper is made upon the ground that in it "the informer had been employed for six months and had always given accurate and reliable information. No comparable testimony concerning the informer James appears in this record." With this latter conclusion, we cannot agree. It is true that here the informer's services were of two months rather than six months duration, and that here there was testimony of the receipt of four accurate pieces of information regarding violations of narcotics laws, while in Draper there is reference to the agent Marsh having received information from the informer "from time to time" which the agent had "always found * * * to be accurate and reliable." 358 U.S. at page 309, 79 S.Ct. at page 331.

We do agree with appellants that the question this case raises is the same as that raised in the Draper case, whether

knowledge of the related facts and circumstances gave the government agents "probable cause" within the meaning of the Fourth Amendment,[3] and "reasonable grounds" within the meaning of 26 U.S.C. § 7607,[4] to believe that petitioner had committed or was committing a violation of the narcotics laws.[5]

"If it did, [says Draper] the arrest, though without a warrant, was lawful and the subsequent search of petitioner's person and the seizure of the found [marijuana] were validly made incident to a lawful arrest * * *."[6]

" 'In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' "

Draper v. United States, supra, 358 U.S. at page 313, 79 S.Ct. at page 333, citing Brinegar v. United States, 1949, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879.[7]

**2.** The trial judge continued the trial of the case from August 28, 1958 to September 30, 1958 so that defense counsel could endeavor to find the missing witness. The motion to suppress had been originally heard by the same judge who tried the defendants on August 27 and 28th, and September 30th, 1958.

**3.** The Fourth Amendment of the Constitution of the United States provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

**4.** 26 U.S.C. § 7607 (1958) was added by § 104(a) of the Narcotic Control Act of 1956, 70 Stat. 570, and provides, in pertinent part:
"The Commissioner * * * and agents, of the Bureau of Narcotics * * may—
* * * * *
"(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * *

or marijuana * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

**5.** The two phrases "probable cause" and "reasonable grounds" are substantial equivalents. See note 3, Draper v. United States, supra, 358 U.S. at page 310, 79 S.Ct. at page 331. This disposes of appellee's suggestion made upon oral argument that "reasonable grounds" is something less than "probable cause."

**6.** 358 U.S. 307, at pages 310–311, 79 S.Ct. 329, at pages 331–332, citing Weeks v. United States, 1914, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652; Giordenello v. United States, 357 U.S. 480, 483, 78 S. Ct. 1245, 2 L.Ed.2d 1503; Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Carroll v. United States, 1925, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543.

**7.** Cf. also, Carroll v. United States, supra, note 6; Director General of Railroads v. Kastenbaum, 1923, 263 U.S. 25, 44 S.Ct. 52, 68 L.Ed. 146; Stacey v. Emery, 1879, 97 U.S. 642, 24 L.Ed. 1035; Rodgers.

With these cases in mind, let us turn to the evidence in this case. It is conceded that no warrant was obtained by the officers previous to the arrest and search on the afternoon of May 27, 1958. Feldman, the government narcotics agent in charge of the arrest and search, had been first advised by the informer that he (the informer) had *heard* of appellant Butler's alleged sales from and possession of marijuana within apartment number five, located at 1683 Ellis Street, San Francisco, California. By arrangement, a meeting was had that evening with the informer between 7:30 and 8:00 P.M. At that time, the informer stated he had seen a quantity of narcotics in Mr. Butler's apartment within the past hour. The arrest took place at 9:00 P.M. that evening.

When Feldman heard from the informer that appellant Butler possessed and was dealing in marijuana from certain premises (1683 Ellis Street, San Francisco), he communicated with a Deputy United States Attorney who advised him that the wife of the United States Commissioner was having a baby; that the United States Commissioner was at the hospital; and that it was impossible to get a search warrant. At that time Feldman was advised to "Go ahead—make the arrest without the warrant." [8] Whether that advice, given prior to the second meeting with the informer on that day, was good or bad we need not here decide. Up to that time the informer had "heard" there were narcotics. Before

the second meeting he had "seen" the narcotics in the premises.

With respect to the officer's *experience,* Feldman had been a federal narcotics officer "going on" four years and had been in investigating work thirteen or fourteen years.

With respect to the reliability of the informer, on March 27, 1958, William James, the informer herein, had been paroled by the Board of Parole Commissioner of Marin County to the Agents of the Federal Bureau of Narcotics, San Francisco, California (Gov. Ex. 4). On April 7, 1958, he had "initiated a case" for the federal officers.[9] Thereafter he had "initiated two cases" for the narcotics squad of the San Francisco police department in April or May, 1958, by making purchases of narcotics for them.[10] This Feldman knew. At the time of giving the narcotics officers the information on Butler, James was a "special employee" of the government, *i. e.,* a paid informer.

We cannot rule that under the facts and circumstances here Agent Feldman had no probable cause or reasonable grounds *as a matter of law* to believe that Butler was committing a violation of the laws relating to narcotic drugs at the time he arrested him. The trial court ruled he had upon a motion to suppress and upon the trial reopened the subject and again denied the motion to suppress.[11] The arrest being lawful, the search incident thereto was lawful.[12]

v. United States, 9 Cir., 1959, 267 F.2d 79, 82.

8. The fact of a birth in the United States Commissioner's family on May 28th, 1958, at 3:00 P.M., in a hospital, was verified by counsel for appellants.

9. We infer the statement "he initiated a case" means James gave reliable information to Agent Feldman.

10. This obviously hearsay testimony was stricken from the record when introduced through Agent Feldman's testimony on direct examination (Record p. 72) and by government counsel's questions of witness Fogarty (Record p. 103), but was brought into the record by counsel for

appellant Butler by the asking of that most dangerous question on cross-examination: *"What is the reason* for your belief?" (Record, p. 106. Emphasis added.)

11. Record pp. 182–183.

12. Appellants make no point that probable cause did not exist for the arrest and search, except to attack the value, weight and existence of the information given to Feldman by James. If we assume that James existed, and informed (and the trier of facts impliedly did so find), then the arrest was lawful. State law determines the validity of arrests without warrants, subject to such mini-

As Mr. Justice Douglas said in his Draper dissent, supra, 358 U.S. at page 324, 79 S.Ct. at page 339, quoting Poldo v. United States, 9 Cir., 1932, 55 F.2d.

mum standards as the Supreme Court may rule are required by the federal constitution. Johnson v. United States, 1948, 333 U.S. 10, 15, note 5, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210.

California Penal Code § 836 provides in part:

"A peace officer * * * may, without a warrant, arrest a person:

\* \* \* \* \*

"2. When a person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested.

"5. At night, when there is reasonable cause to believe that he has committed a felony."

California Penal Code § 836 is applicable to federal agents. Cline v. United States, 9 Cir., 1925, 9 F.2d 621.

Marijuana is classified as a narcotic in California. California Health and Safety Code § 11001(h). The sale of narcotics in California is punishable by imprisonment in the county jail for not more than one year, or in state prison from five years to life. California Health and Safety Code § 11713. Possession of marijuana is likewise punishable by jail or prison sentence. California Health and Safety Code § 11712. The maintenance of any place for the unlawful sale of narcotics is unlawful and similarly punishable. California Health and Safety Code § 11557. Thus the state trial court has the discretion in each of these crimes by the punishment decreed to make the crime either a felony or a misdemeanor. A crime which may be punished by imprisonment in state prison is deemed to be a felony, unless the court actually exercises its discretion by imposing only a fine or jail sentence. In re Wolfson, 1947, 30 Cal.2d 20, 180 P. 2d 326; Ex parte Rogers, 1937, 20 Cal. App.2d 397, 66 P.2d 1237.

For a late case on what constitutes probable cause under California law, and the danger of fictitious informants, a point urged below in the instant case, see People v. Prewitt, Cal.1959, 341 P.2d 1, at pages 4–5, where the Supreme Court of that state said:

"Evidence of information from a reliable informer is sufficient to sustain a finding that an arrest, search, and seizure were made with reasonable cause. Willson v. Superior Court, 46 Cal.2d 291, 294–295, 294 P.2d 36; People v. Boyles, 45 Cal.2d 652, 656, 290 P.2d 535; People v. Dupee, 151 Cal.App.2d 364, 367, 311 P.2d 568; People v. Dean, 151 Cal. App.2d 165, 167, 311 P.2d 85; Lorenzen v. Superior Court, 150 Cal.App.2d 506, 513, 310 P.2d 180; Trowbridge v. Superior Court, 144 Cal.App.2d 13, 18, 300 P.2d 222; see 9 Stan.L.Rev. 515, 523–524. 'Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency [citation], an arrest may not be based solely on such information [citations], and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. [Citation.] In some cases the identity of, or past experience with, the informer may provide such evidence [citation], and in others it may be supplied by similar information from other sources or by the personal observations of the police.' Willson v. Superior Court, 46 Cal.2d 291, 294–295, 294 P.2d 36, 38. In the Willson case, as in this case, the informer did not identify himself to the officer, but we held that his information together with facts personally observed by the officer were sufficient to constitute reasonable cause for an arrest. Admittedly, an informer's failure or refusal to identify himself may cast doubt on the reliability of his information, but the fact that his information has proved reliable in the past is at least as persuasive of his present reliability as the corroborating suspicious circumstances observed by the officer in the Willson case; circumstances that alone were not sufficient to constitute reasonable cause. The testimony before the grand jury does not establish that essential evidence was illegally obtained, and accordingly, the trial court erred in setting aside the indictment.

"Defendant contends, however, that if reasonable cause may be established by information from an informer whose identity is unknown to the officer, the rule of the Priestly case [Priestly v. Superior Court, 50 Cal.2d 812, 330 P.2d 39] may be circumvented by the officer's claiming ignorance instead of privilege and the door will be opened to justify illegal arrests on the basis of fictitious informa-

866, at page 869: "Mere suspicion is not enough; there must be circumstances represented to the officers through the testimony of their senses sufficient to justify them in a good-faith belief that the defendant had violated the law." With this we fully agree. The majority in Draper, supra, found the word of an accurate and reliable informer, employed for that purpose, plus the physical presence of the suspect at the designated spot, dressed in a certain manner, sufficient to constitute probable cause for arrest. The court below with its opportunity to appraise witnesses and resolve the question of good faith on the part of the arresting officers so found in this case on two occasions. Under the existing mandate of our Supreme Court, we cannot say this was error.

### III.

■ If the arrest and search were legal as to Butler, the questioning of Cahee, the visitor, and his arrest and search after he had freely admitted the possession of marijuana just previously purchased from Butler, and after the finding of the marijuana on Cahee when he was searched, were both lawful. United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59, does not apply.

tion from fictitious anonymous informers. It cannot be presumed, however, that officers will commit perjury (Lorenzen v. Superior Court, 150 Cal.App.2d 506, 510, 310 P.2d 180), and it must be presumed that trial courts will be alert to detect perjury if it does occur. See People v. Roberts, 47 Cal.2d 374, 378, 303 P.2d 721. Moreover, since the privilege of nondisclosure must be waived if the information is to be relied upon, the officer may be cross-examined fully as to facts that might tend to identify the informer and test the officer's credibility. His testimony is not limited to general statements that on previous occasions reliable information was given, and he

### IV.

■ There is a second, though technical, reason why we should not reverse. Appellants' second point relates to the admission of the evidence seized as the result of an alleged unlawful search and seizure. Their appeal therefore necessarily involves the court's refusal to suppress. Such motion was properly heard prior to the trial,[13] on June 25, 1958, though the matter was reopened and again ruled upon at the trial (adversely to appellants). In the record on the appeal we find no part of the testimony originally given on the motion to suppress. We cannot know what evidence was before the court at that time, and we are in no position to guess whether the same evidence with respect to suppression was before the court on the hearing of the motion as was before it at the time of trial. In view of our determination above on point II however, this deficiency becomes unimportant. The record before us is sufficient to enable us to consider the point on the evidence produced when the motion was renewed at the trial. We must assume all evidence that could be produced was so produced at the later hearing.

The judgment of conviction is affirmed as to each appellant.

cannot claim a privilege that the details would tend to identify the informer. His testimony can be elicited as to all of the details of the information claimed to have been received, and the officer must relate that information to actual arrests or investigations made in claimed reliance on it. Not only would it be difficult to fabricate such details, but since they must be related to actual facts, avenues of investigation to refute them may be opened."
And see People v. Howard, 1959, 173 Cal.App.2d ——, 345 P.2d 41.

13. Fed.R.Crim.P. 41(e), 18 U.S.C.