Laurence Fredrick **ANTHONY,**
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18878.

United States Court of Appeals
Ninth Circuit.

May 7, 1964.

Edgar Paul Boyko, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Myron Roschko and Robert H. Filsinger, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, MERRILL and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal in forma pauperis from the denial of a motion to vacate sentence pursuant to 28 U.S.C. § 2255. The motion filed was in the alternative; i. e., likewise to correct an illegal sentence under Rule 35, Federal Rules of Criminal Procedure.

To understand this appeal, we must note its background. We quote from appellee's brief:

"Appellant, Laurence Frederick Anthony, was indicted by the Federal Grand Jury on March 27, 1957, for violations of Title 21, United States Code, Section 176(a) (sic, 176a) for selling 5 ounces of marihuana on Feb. 23, 1957 and 2 pounds, 5 ounces of marihuana on March 11, 1957, and was convicted on May 23, 1957. On June 10, 1957, the Honorable William C. Mathes, United States District Judge sentenced the appellant, Laurence Frederick Anthony, to the custody of the Attorney General for a period of 20 years and

a fine of $5,000 to be paid to the United States for the offense charged in Count One of the indictment and 20 years for the offense charged in Count Four of the indictment, said two 20 year sentences to run consecutively for a total period of 40 years.

"A timely notice of appeal was filed and the judgment of conviction was affirmed by this Honorable Court in Anthony v. United States, 256 F.2d 50 (Ninth Cir. 1958). On June 9, 1959, appellant filed in the United States District Court a motion to vacate his sentence pursuant to Title 28, United States Code, Section 2255, alleging insufficiency of the evidence as grounds therefore and said motion was denied on August 25, 1959. On November 9, 1959, appellant again filed a motion pursuant to Title 28, United States Code, Section 2255, to vacate the sentence of the District Court imposed on June 10, 1957, alleging basically the same reasons as in his first 2255 motion and his second motion to vacate sentence was denied on December 31, 1959.

"Counsel was appointed by this Honorable Court for the appellant on May 7, 1960. Thereafter, a motion for leave to appeal in forma pauperis and to proceed on typewritten briefs was denied by this court on December 6, 1960. In February of 1961, the appellee, United States of America, moved this court to dismiss the appeal from the denial of the 2255 motion for failure to prosecute the appeal as provided in Rule 73 (sic, 39(a)) of the Federal Rules of Criminal Procedure. Said motion was granted on March 6, 1961. Certiorari was denied by the United States Supreme Court on October 9, 1961, which is reported in Anthony v. United States, 368 U.S. 852 [82 S.Ct. 85, 7 L.Ed.2d 49] (1961)."

Jurisdiction below rested on 18 U.S.C. § 3231; 21 U.S.C. § 176a; 28 U.S.C. §

2255; Rule 35, Fed.R.Crim.P. Jurisdiction here exists under 28 U.S.C. §§ 1291 and 1294.

Counsel for appellant accepts and adopts the court's statement of facts appearing in 256 F.2d 50, when his conviction was affirmed. (Op. Brf. p. 3.) We note here, as we noted there, that the insufficiency of the evidence to convict on either count was not previously raised, but rather four alleged errors in the introduction of evidence. For that reason, it was not necessary for the entire evidence in detail to be summarized in our previous opinion, nor even to attempt to summarize its important features. For that reason it becomes necessary to state the facts, and we adopt the statement made by the government as appears in the margin.[1]

1. "Federal Narcotic Agent William C. Gilkey first saw Appellant's codefendant Lucas Landry on February 23, 1957, in Los Angeles, at about 2:00 in the afternoon. The two men had a conversation in which Gilkey asked Landry if the latter knew where the agent could secure a connection for marihuana since he was interested in establishing himself in the marihuana traffic in Pasadena. Defendant Landry stated that he might be able to supply Gilkey with a half pound of marihuana later on in the afternoon. Landry told Gilkey to call him back at 7:00 P.M.

"That evening Gilkey called defendant Landry on the telephone and asked the defendant if he had the half pound of marihuana. Landry said he didn't have it then and Gilkey was to call him back within an hour. Gilkey did call back within an hour and Landry asked him to go over to his house.

"Gilkey did so at approximately 8:15 P.M., and went in. Gilkey asked Landry if he had the half pound of marihuana and Landry said he didn't have it then but that he had made contact with a man who was to bring marihuana to his house. Gilkey agreed to wait. Later in this conversation, when Landry approached Gilkey with the possibility of the two of them going into the marihuana business together, Landry stated that he could possibly set himself up on the West side, a friend could set himself up out in Compton and Gilkey would cover Pasadena. The idea was for the three of them to pool their money and buy marihuana in large quantities, thus doubling the investment being put into it.

"Immediately thereafter the telephone rang and Landry spoke to someone. He stated, 'Bring it on. Stud is here.' Then Landry told Gilkey that the 'stuff' would be there in a few minutes.

"About fifteen minutes later, appellant Laurence Frederick Anthony arrived at the apartment house in his 1947 Chevrolet and went inside carrying a brown paper bag of the type normally obtained in a grocery store. Landry asked appellant to step into the bedroom located by the living room where Gilkey was waiting. Appellant took the bag into the bedroom. It appeared to Gilkey that the bag contained something. Landry and Anthony remained in the bedroom for about five or ten minutes and then Landry came into the living room and asked Gilkey for $35.00, which was the agreed price for one-half pound of marihuana. Gilkey gave Landry $35.00 of official advance funds. Landry took the $35.00 back into the bedroom where appellant was waiting while Gilkey remained in the living room. Two or three minutes later, appellant left through the front room. Landry then returned to the living room and asked Gilkey to go into the bedroom and see what he had purchased.

"Gilkey went into the bedroom with Landry who opened a drawer in the dresser in which was a brown paper bag similar to the one that appellant had brought with him. Gilkey looked in the bag at Landry's invitation and they poured the contents of the bag into a newspaper. Upon examining it the substance appeared to Gilkey to be similar to bulk marihuana. Thereafter, the two men measured the quantity of marihuana contained in the bag and Gilkey carried it outside to the Government automobile where the container was initialed.

"In the meantime, appellant had gotten into his Chevrolet and left the vicinity. He was there about ten minutes altogether.

"Agent Gilkey saw the defendant Landry again on February 27, 1957, at approximately 8:45 P.M., in Los Angeles. He had telephoned Landry earlier and had asked him if he could supply another pound of marihuana. Landry had told Gilkey that the agent would have to call him again because his 'connection' would not be home until later. A 'connection' was a source of narcotics. Gilkey agreed and telephoned Landry shortly after 7:00 P.M. At that time Landry still had not heard from his connection but told Gilkey to come on by his house within an hour.

"At about 8:45 P.M. Gilkey arrived at Landry's home and went in. Gilkey ask-

Three alleged errors are raised, which we will consider in turn:

*I—The trial court lacked jurisdiction because of the absence of any substantial evidence of possession of marijuana.*

■ From the recital in note 1, there exists ample evidence from which a proper and lawful inference of control and dominion over, and hence possession of, the marijuana involved, by the appellant may be drawn by the trier of fact.

■ "It is true," admits appellant, "that there is a possible inference that he [appellant] indeed delivered the mari-

ed Landry if the latter had the marihuana and the answer was yes. Gilkey was asked to come into the bathroom and see the marihuana, Landry explaining that the last time in the bedroom marihuana seed and debris had been scattered everywhere and he didn't want that to happen again. Landry told Gilkey the marihuana would cost him $70.00 since the price was still $35.00 for each half pound. The agent examined one of the bags and told Landry it looked all right. Landry again approached Gilkey with the idea of the two of them going into the marihuana business together and Gilkey said he would think about it. He then gave Landry $70.00 of official advance funds and Landry told him to call him when the agent got back into town. Gilkey then left after stating he might possibly do business with Landry the following weekend.

"In the meantime, appellant Anthony had been observed parked near the apartment as agent Gilkey went in. After Gilkey left, codefendant Landry came out and went over to appellant's car, got in and stayed a few minutes. He then got out and appellant left. (Appellant was not charged as a defendant in Count 2 relating to the above transaction.)

"Agent Gilkey saw defendant Landry again on March 7, 1957, having previously called him at approximately 5:00 in the afternoon. Gilkey asked Landry if the latter could get two pounds of marihuana. Defendant Landry said to call him back around seven o'clock. After a couple of other calls Landry instructed the agent to go to his house, which Gilkey did around 8:15 P.M. Landry invited him in and said he had two pounds of marihuana. He went to the rear of his house and returned with the marihuana. It was contained in a brown bag which codefendant Landry was carrying with him as he came back into the front portion of the place. Meanwhile, appellant Anthony's car was parked at the rear of the building. Inside, Gilkey was told by Landry that the price of the two pounds was $140.00, as it was still selling at $35.00 a half pound. Gilkey took the brown bag and walked to a Government automobile. While this happened, appellant had gotten in his car and circled the block, returned and parked near the apartment. After Gilkey left, codefendant Landry came out to appellant's car and got in for a few minutes. Then he went back to the apartment and appellant departed. Later, at his office Agent Gilkey found that he had been shorted on the quantity of marihuana and immediately telephoned Landry in that respect. Landry said the marihuana had been brought to him that way and the 'man' was the person responsible for the shortage in weight. Gilkey asked Landry to do something to make the weight up and the latter said he would look into it on a later date. (Appellant was not charged in Count Three relating to this transaction.)

"The next time Gilkey saw Landry was on the 11th day of March, 1957, at the defendant's home at around 8:15 P.M. Earlier that afternoon he had spoken with Landry over the telephone. Gilkey asked the defendant if he had spoken with his source of supply about making up the half pound difference in the marihuana which had been shorted. Gilkey was told that the 'man' said he would make up one-quarter pound but not one-half a pound. Gilkey then asked Landry if the agent could pick up two pounds of marihuana from him that evening. Landry told him that he could do so with a telephone call being made in advance of his visit. About seven o'clock, Gilkey phoned Landry, who stated that he hadn't heard anything as yet. Gilkey phoned back at 7:45 and arrangements were made for him to drop by Landry's house to pick up the marihuana. Gilkey arrived at Landry's house, parking his car in the rear driveway according to Landry's instructions. He then went into the house. About five or ten minutes later the bell rang. Appellant had gotten out of his car and walked to the rear portion of the address. Landry answered the door at the rear. He went out to appellant's car and returned to the rear with a brown paper bag. When he reappeared in the living room, Landry had the brown paper sack in his hand and said to Gilkey 'Here's your stuff.' Gilkey glanced in the top of the bag and looked in observing a sub-

juana, prior to the two sales, in brown-paper bags; that he carried his supply in his car [etc]." This being so, the possible inference becomes a proper inference of the fact of possession—of dominion and control of the marijuana—and once made by the trier of fact, and determined by him to be substantial, clear and convincing proof, such a determination of fact is binding on us. Williams v. United States, 9 Cir. 1961, 290 F.2d 451. The fact that *all* evidence might be circumstantial (though such state of facts does not here exist) would not prevent the finding of the jurisdictional fact of possession. Rodella v. United States, 9 Cir. 1960, 286 F.2d 306, and cases cited, p. 312, cert. den. 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199.

 Appellant urges that the only two decisions of the Supreme Court ever to uphold the validity of the statutory presumption established defendant's possession by "direct proof" as "actual and physical," not "constructive" possession. We cannot agree.

In Roviaro v. United States, 1957, 353 U.S. 53, 57, 77 S.Ct. 623, 1 L.Ed.2d 639, the government agent saw just what the government agent here saw—there the defendant carrying a small package (here a brown paper bag). In Yee Hem v. United States, 1925, 268 U.S. 178, 182, 45 S.Ct. 470, 471, 69 L.Ed. 904, the facts merely show: "The plaintiff * * *

*at the time of his arrest* * * * was found in possession of and concealing a quantity of smoking opium." (Emphasis added.) Here, at the time of appellant's arrest in an auto, marked money used previously to buy marijuana was found on him,[2] and two bags of marijuana were found in his automobile.

But even were the distinction urged by appellant to be accepted, it would *not* prove that because actual physical possession existed in two cases before the Supreme Court, a different rule would be expected were the possession only a constructive possession.

Appellant also requests us to consider Harris v. United States, 1959, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597, reh. den. 359 U.S. 976, 79 S.Ct. 873, 3 L.Ed. 2d 843. In Harris the Supreme Court merely states: "The Government introduced into evidence the heroin itself, and testimony that petitioner had been in possession of it." (359 U.S. p. 20, 79 S. Ct. p. 562, 3 L.Ed.2d 597) But a review of the facts disclosed in the opinion of the court of appeals (8 Cir. 1957, 248 F. 2d 196) reveals no "actual, physical" possession of the heroin in defendant Harris, but merely that he was identified by one of two police officers as being physically present in a room; in which room were two other persons (Robinson and Stamps); one of whom (Robinson) "had his hand in the white powder [on

stance that appeared to be marihuana. Landry again approached him with the idea of going into the marihuana business together. Gilkey told him he would talk to him about it later and gave Landry $140.00 which had been requested as the price of two pounds of marihuana. Landry asked Gilkey to step through the kitchen and leave by the rear door which he did. As he got into his automobile he observed an automobile parked directly behind him blocking the driveway leading to the street. Gilkey asked Landry to *do something about moving the car and the* latter walked over to the automobile and spoke through the window. Gilkey recognized appellant as being in the front seat of the vehicle. Shortly thereafter, Anthony backed the automobile out and Gilkey followed with his own automobile, leaving the premises. Codefendant Landry then went over to appellant's car and got in for a few minutes. Shortly thereafter appellant left. The bills comprising the $140.00 given to Landry on this occasion had been noted previously according to serial numbers. Appellant was arrested at approximately 9:00 P.M., on the same evening pursuant to a warrant issued previously. The $140.00 was found on his person as well as the two bags of marihuana in his car."

**2.** As to the evidentiary conclusiveness both as to the negotiation for a sale of drugs and a finding of purchase money on a defendant, constituting possession, see Cellino v. United States, 9 Cir., 1960, 276 F.2d 941, 945, and United States v. Malfi, 3 Cir. 1959, 264 F.2d 147, cert. den. 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63.

a mirror] on the bed." (248 F.2d p. 198) Harris claimed an alibi, supported by the testimony of one Mason (allegedly the true third man in the room); one of the two codefendants, and his common-law wife. Yet the court of appeals stated there was competent evidence Harris "was present with the other defendants in the room at 4567 McMillan where unstamped heroin was being handled, that Harris was 'shown to have had possession of it,' and to be a 'person in whose possession it was found' within the meaning of the sections of the statute on which the indictment was rested."

These facts disclosed by the court of appeals' opinion, plus the Supreme Court's affirmance relying on the presumption based on defendant's failure to explain his constructive possession, strongly indicate that the Supreme Court will require "direct evidence," [3] but not necessarily require actual proof of physical possession before it will sanction the application of the presumption.[4]

We hold there was clear and convincing proof by substantial evidence of appellant's possession of the prohibited drug.

II—*The trial court lacked jurisdiction because there was no evidence of unlawful importation.*

Here appellant raises the question as to whether the presumption created by the fact of possession, under the terms of the second paragraph of 21 U.S.C. § 176a [5] can logically be applied to marijuana, known to occasionally grow in the United States, as it has been applied to the products of the opium poppy,[6] known not to be grown in the United States.

In Caudillo v. United States, 9 Cir. 1958, 253 F.2d 513, cert. den. sub nom. Romero v. United States, 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1373, we avoided ruling on the question here again raised by finding sufficient evidence in the record from which an inference could logically be drawn that the marijuana had come from outside the United States, *i. e.,* that there existed a rational connection between the fact proved and the ultimate fact presumed. That was because the marijuana was "unmanicured," *i. e.,* "it had seeds and stems and sticks mixed with the marihuana leaves." (Cf. discussion in Caudillo, 253 F.2d pp. 515–516.)

■ There are four reasons why we conclude that here competent evidence existed of unlawful importation, and hence there was jurisdiction:

*First:* There was evidence in the record that on February 23, 1957, when the first sale was consummated (Count I) the marijuana allegedly brought by defendant in the paper bag was examined in codefendant Landry's bedroom. When the second purchase was made on February 27, 1957 (in which defendant Anthony was not seen to have had any connection and with which sale he was not charged), Landry referred to the previous February 23rd sale, and that "the last time in the bedroom marijuana *seed* and *debris* had been scattered everywhere and [Landry] * * * didn't want that to happen again." (Emphasis add-

---

3. For a discussion of the term "direct evidence," as used by Justice Clark, see Rodella v. United States, 9 Cir. 1960, 286 F.2d 306, 310–313, cert. den. 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199.

4. Cf.: Cellino v. United States, supra, 276 F.2d at 945; Pitta v. United States, 9 Cir. 1947, 164 F.2d 601, 602; United States v. Pisano, 7 Cir. 1951, 193 F.2d 355, 360.

5. "Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his pos-

session, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

6. Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Caudillo v. United States, 9 Cir. 1958, 253 F.2d 513, cert. den. sub nom. Romero v. United States, 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1373; Hooper v. United States, 9 Cir. 1926, 16 F.2d 868; Rosenberg v. United States, 9 Cir. 1926, 13 F.2d 369.

-ed.) It could have been reasonably inferred that the seed and debris would come only from "unmanicured" marijuana.

Thus, if we assume the trial court could take judicial knowledge of the *kind* of marijuana grown in the United States (and how it differs from the imported marijuana, and defendant requests the court to take judicial knowledge that marijuana sometimes grows in the United States), there exists sufficient competent evidence to call the presumption into play on behalf of the government.

In Butler v. United States, 9 Cir. 1959, 273 F.2d 436, we relied (p. 439) upon the same type of evidence.

*Secondly:* In Costello v. United States, 9 Cir. 1963, 324 F.2d 260, cert. den. 376 U.S. 930, 84 S.Ct. 699, 11 L.Ed.2d 650, we went further than we had in Caudillo and Butler, but concluded, on the record of that case, particularly where "no attempt was made to make a record as to the conditions or restrictions under which the drug there involved * * * may lawfully be possessed or used," [7] presence of "manicured" marijuana was not sufficient to render the statute invalid. As in Costello, we here go no further than to repeat "on this record we cannot say that the statute is unconstitutional either on its face or as applied to this case."

■■ *Third:* This is before us as an appeal from a denial of a § 2255 motion. Title 28 U.S.C. § 2255 was not created to substitute for or take the place of an appeal. Fiano v. United States, 9 Cir. 1961, 291 F.2d 113, cert. den. 368 U.S. 943, 82 S.Ct. 380, 7 L.Ed.2d 340; · Perno v. United States, 9 Cir. 1957, 245 F.2d 60, cert. den. 362 U.S. 964, 80 S. Ct. 880, 4 L.Ed.2d 878. The question now raised was not raised on the appellant's original appeal. (Cf. 256 F.2d 50.) Labeling the constitutionality of the presumption clause a matter of "jurisdic-

tion" does not make it one. There is sufficient evidence in this record to make the applicability of the second paragraph of § 176a one of law, and not a question of jurisdiction. There are no facts to demonstrate a lack of jurisdiction, and counsel cites us no cases to demonstrate the lack. "The presumption created is 'a rule, not of substantive law at all, but merely of evidence.' Ng Choy Fong v. United States, 9 Cir., 1917, 245 F. 305, 307; Stein v. United States, 9 Cir., 1948, 166 F.2d 851, certiorari denied 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768." Butler v. United States, 9 Cir. 1959, 273 F. 2d 436, 438. Hernandez v. United States, 9 Cir. 1962, 300 F.2d 114, 118.

*Fourth:* Other courts of appeal have had no difficulty in upholding the application of the presumption to marijuana, despite its growth in the United States. United States v. Kapsalis, 7 Cir. 1963, 313 F.2d 875; United States v. Gibson, 2 Cir. 1962, 310 F.2d 79. And, for whatever it may be worth, we note the United States Supreme Court denied *certiorari* in the Kapsalis case, supra, 374 U.S. 856, 83 S.Ct. 1911, 10 L.Ed.2d 1077.

III—*The forty year sentence is a denial of due process, and the infliction of cruel and unusual punishment.*

■ There is no merit to this point. The sentence was within the term prescribed by the Congress. The punishments prescribed, fine and imprisonment, are and always have been customary punishments for crime in this country, and cannot be said to be either cruel or unusual. The defendant was convicted of two sales on two different days and under different circumstances. Appellant's argument with respect to hypothetical consecutive maximum sentences for (a) receiving, (b) concealing, (c) buying, (d) selling, (e) transporting, (f) facilitating the concealment, (g) facilitating the transportation, etc., etc., *ad infinitum,* "on one or perhaps two oc-

---

7. Quoting from De Rose v. United States, 9 Cir. 1963, 315 F.2d 482, cert. den. 375 U.S. 846, 84 S.Ct. 99, 11 L.Ed.2d 73, respecting the drug "methadon." And

Cf.: Erwing v. United States, 9 Cir. · 1963, 323 F.2d 674, respecting cocaine-hydrochloride.

casions immediately connected with one another" makes no sense. "Punish the incorrigible recidivist as Congress intended," urges appellant, "and not the first offender." Appellant was convicted of two separate offenses which occurred on two separate occasions. The punishment fixed for each offense was within the limit prescribed by Congress for that offense, and the court had the discretion to order the sentences to run consecutively rather than concurrently.

Nor does it aid appellant to urge upon us the problem of disparate sentences. That is a problem which will someday doubtless be solved by statutory enactment of some system for the federal courts similar to the indeterminate sentence law of California and other states. It is the duty of the judiciary to study the problem, and to aid in solving it, but not by judicial legislation.

It is urged that the punishment imposed is excessive. On the record that is before us (which, for example, does not include the presentence report), the punishment imposed, while within limits of permitted discretion, does appear to be severe. We note that the judge who denied the motion here on appeal was also the sentencing judge, and he suggested to counsel that Anthony should seek executive clemency.[8] This seems to be appellant's only present remedy.

"If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." Gurera v. United States, 8 Cir. 1930, 40 F.2d 338, 340–341; Brown v. United States, 9 Cir. 1955, 222 F.2d 293, 298; Pependrea v. United States, 9 Cir. 1960, 275 F.2d 325, 330.

The denial of the motion to vacate sentence is *affirmed.*

8. "But I will say here that if Rita Hamer was entitled to have her sentence reduced to 10 years, certainly, certainly, certainly Laurence Frederick Anthony, in my opinion, is entitled to have his sentence reduced to ten years. And so would his co-defendant, also. * * * I will state it from the bench as I have stated it, and you may quote that, if you like."